Wilburn R. ROSS and Bernadine M. Ross, Plaintiffs-Appellants,

v.

Jerome C. SCHUBERT, Robert M. Schleinkofer, and Garland D. Anderson, Defendants-Appellees.

No. 2–1176A429.

Court of Appeals of Indiana, Fourth District.

April 30, 1979.

Robert Thompson and David Peebles, Peebles, Thompson, Rogers & Hamilton, Fort Wayne, James W. Bowers, Palmer, Bowers & Brewer, Huntington, for appellants.

Milford M. Miller, Grant F. Shipley, Livingston, Dildine, Haynie & Yoder, Fort Wayne, Williams P. Door, Lord Bissell & Brook, Chicago, Ill., Ted S. Miller, Gordon, Glenn, Miller, Bendall & Branham, Huntington, for appellees.

CHIPMAN, Presiding Judge.

■ Appellants Wilburn R. Ross (Ross) and his wife, Bernadine M. Ross, sued the physician defendants for damages based on alleged medical malpractice. This appeal from an adverse verdict and judgment raises one issue: Do the "fellow employee" immunity provisions of the Indiana Workmen's Compensation Act protect a company physician from a claim of medical negligence brought by an employee of the same company. We conclude they do not and reverse.

## FACTS

Ross was employed as a factory worker by International Harvester Company at its Fort Wayne plant. The three defendants are all licensed Indiana physicians who were employed on a part-time basis by International at its clinic located in the same plant; they met all the requirements for being salaried employees of International.

While employed at International Ross became partially disabled due to a nonindustrial accident and was subsequently assigned to light duty work under the handicap job program provided by International. Periodically those assigned to this program are examined by the doctors at the company clinic to determine if they have recovered and can thus return to their normal factory work or can be assigned to jobs requiring less restrictions. In accordance with this procedure, Ross was examined by one of the defendants and a determination was made that he could perform regular factory work with some weight lifting limitations. Ross started his new job and three days later was unable to continue; a determination was made that he was permanently disabled. Ross alleges that his disability was caused by various negligent acts of the three defendants with regards to his reclassification and the treatment he received when he reported soreness after beginning his new job.

The issue before us was raised by various instructions tendered by the defendants and given by the court over Ross' objection. The crucial instruction stated, in effect, that if the jury found the defendant doctors were employees of International, then they were immune from a claim of damages based on malpractice.[1] The premise for this

---

1. Preliminary Instruction No. 4:

The issues to be tried and determined in this action are whether the material allegations of the complaint are true, as claimed by the plaintiff, or false, as claimed by the defendants. In addition, the defendants, Jerome C. Schubert, Robert M. Schleinkofer and Garland D. Anderson, under their answer, *may raise the issue of whether or not they were employees of the International Harvester Company and as such, were immune from suit.*

The burden of proof is upon the plaintiffs to prove the material allegations contained in their complaint by a fair preponderance of the

evidence before you would be warranted in returning a verdict in favor of the plaintiffs, and the burden is upon the defendants, Jerome C. Schubert, Robert M. Schleinkofer and Garland D. Anderson, to prove that they were employees of International Harvester Company by a fair preponderance of the evidence before you could find that they are immune from suit.

In your consideration and determination of the question of negligence, if any, of the defendants, you should consider all the evidence in the cause whether introduced by the plaintiffs or by the defendants.

Final Instruction No. 15:

instruction would obviously be that the Workmen's Compensation Act would provide the exclusive remedy if the harm to that employee was caused by the negligence of a fellow employee. Ind. Code 22–3–2–13.

## CONCLUSION

After carefully studying the history of the Indiana Workman's Compensation Act and examining its provisions, we are unable to discern from the Act any legislative design to immunize physicians from medical malpractice claims or to interfere with the customary physician-patient relationship. It is our opinion that it would torture the Indiana legislature's intent, as evidenced by its objectives in enacting the Act, to let the simple rubric of "in the same employ" insulate physicians from liability arising out of the performance of professional medical services.

> You are instructed that a civil action for injuries against a co-employee is barred when the injury arises out of and in the course of employment.
>
> You are instructed that at the time of his alleged injury, Wilburn R. Ross was an employee of International Harvester Company. The accident out of which he claims injury is, as a matter of law, an injury arising out of and in the course of his employment with International Harvester Company.
>
> The injuries that Wilburn R. Ross claims in this action are ones which he says were caused by the acts or omissions of defendant physicians, Jerome C. Schubert, M. D., Robert M. Schleinkofer, M. D. and Garland D. Anderson, M. D. You are thus instructed that, *if you find from a preponderance of the evidence, the said Jerome C. Schubert, M. D., Robert M. Schleinkofer, M. D. and Garland D. Anderson, M. D. were employees of International Harvester Company when doing or failing to do those things that plaintiff alleges, then your verdict must be in favor of said defendants*, Schubert, Schleinkofer and Anderson.

2. IC 22–3–2–13. Whenever an injury or death, for which compensation is payable under chapters 2 through 6 [22–3–2–1—22–3–6–3] of this article shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages

This court is mindful that when construing statutes, the cardinal principle is to ascertain and give effect to the legislature's intent. *City of Indianapolis v. Ingram*, (1978) Ind.App., 377 N.E.2d 877. The crucial determination in this case is whether a doctor is an individual "in the same employ" as the person injured within the meaning of the statute, Ind. Code 22–3–2–13.[2] Since "it is highly desirable that a statute be given a similar interpretation by the several states wherein it is in force," *Witherspoon v. Salm*, (1969) 251 Ind. 575, 243 N.E.2d 876, we have examined at length the interpretations which other jurisdictions have placed upon similar statutes.[3] Although the statutes themselves are not markedly dissimilar, the variety of results which have been reached is literally rivaled only by the variety of tests which have been employed to justify these conclu-

3. "The following statutes bar co-employee suits in some manner: Ala.Code § 25–5–53 (1972); Alaska Stat. § 23.30.055 (Supp.1976); Ariz.Rev. Stat. § 23–1022 (Supp.1977); Cal.Lab.Code § 3601(a) (West Supp.1977); Colo.Rev.Stat. § 8–52–108 (1973); Conn.Gen.Stat.Ann. § 31–293(a) (1958). Del.Code tit. 19, § 2363 (1974); Ga. Code Ann. § 114–103 (Supp. 1977); Haw.Rev.Stat. § 386–8 (Supp.1975); Idaho Code § 72–209 (1973); Ill.Ann.Stat. ch. 48, § 138.5(a) (Smith-Hurd Supp.1977); Ind. Code Ann. § 22–3–7–36 (Burns Supp.1977); Iowa Code Ann. § 85.20 (West Supp.1977); Kan.Stat. § 44–504(a) (Supp.1977); Ky.Rev. Stat. § 342.690 (1977); La.Rev.Stat.Ann. § 23:1032 (West Supp.1977); Mass.Ann.Laws ch. 152, § 15 (Law. Co-op 1976); Mich.Comp. Laws Ann. § 418.827 (Supp.1977); Mont.Rev. Codes Ann. § 92–204.1 (Supp.1975); Nev.Rev. Stat. § 616.560 (1977); N.J.Stat.Ann. § 34:15–8 (West Supp.1977); N.M.Stat.Ann. § 59–10–4 (Supp.1975); N.Y.Work.Comp.Law § 29 (McKinney Supp.1977); N.C.Gen.Stat. § 97–9 (Supp.1975); N.D.Cent.Code § 65–01–08 (1960); Ohio Rev.Code Ann. § 4123.74.1 (Page 1973); Okla.Stat.Ann. tit. 85, § 44 (West Supp. 1977); Or.Rev.Stat. § 656.154 (1977); Pa.Cons. Stat.Ann. tit. 77, § 72 (Purdon Supp.1977); Tenn.Code Ann. § 50–914 (1977); Tex.Civ.Code Ann. tit. 130, art. 8306, § 3 (Vernon 1977); Utah Code Ann. § 35–1–62 (Supp.1977); Va. Code § 65.1–103 (Supp.1977); Wash.Rev.Code Ann. § 51.24.010 (Supp.1976); W.Va.Code § 23–2–6(a) (Supp.1977); Wyo.Stat. § 27–312(a) (Supp.1975)." Note, *The Malpractice Liability of Company Physicians*, 53 Ind.L.J. 585, 586 (1978).

sions. We will, therefore, be primarily guided by the Indiana legislature's purpose in enacting our Act as well as the Indiana Supreme Court's interpretation of the applicability of earlier provisions of the Act to a company physician.[4]

■ The Act initially developed because of the obstacles and delays which hindered the working person's ability to recover against an employer for industrial related accidents. This undesirable situation proved to be the principal impetus behind the abolishment of common law actions against the employer and the substitution of a no-fault system of recovery. Vargo, *Workmen's Compensation*, 8 Ind.L.Rev. 289 (1974). Under the Act the employee was given a statutory right to compensation, regardless of fault, and the employer's liability was limited to that provided by the Act. *North v. United States Steel Corp.*, (7th Cir. 1974) 495 F.2d 810. Thus, the immediate purpose and effect of the Workmen's Compensation Act was to control and regulate relations between an employer and his employees. *Artificial Ice & Cold Storage Co. v. Waltz*, (1925) 86 Ind.App. 534, 146 N.E. 826. As between them, the Act still provides the exclusive remedy for industrial accidents. Ind.Code 22-3-2-6;[5] *Kottis v. United States Steel Corp.*, (7th Cir. 1976) 543 F.2d 22; *Needham v. Fred's Frozen Foods, Inc.*, (1977) Ind.App., 359 N.E.2d 544; *Stainbrook v. Johnson County Farm Bureau Co-operative Association, Inc.*, (1954) 125 Ind.App. 487, 122 N.E.2d 844.

■ Since the Act's inception, it has been the employment relationship which is to delineate its perimeters of immunity. In enacting the Workmen's Compensation Act, the legislature never manifested a desire to reach beyond the employment relationship and benefit a third party. Thus, the Act was never intended to abridge the remedies an employee has in tort against a *third party*.

The 1929 version of what is now IC 22-3-2-13 stated:

Whenever an injury or death, for which compensation is payable under this Act [§§ 40-1201—40-1414, 40-1503—40-1704], shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, [i. e. a third party], the injured employee, or his dependents in case of death, may commence legal proceedings against such other person to recover damages . . . .

The applicability of this statutory language to a situation involving a company physician was addressed by our Supreme Court in *Seaton v. United States Rubber Company et al.*, (1945) 223 Ind. 404, 61 N.E.2d 177.

In *Seaton*, Dorothy Seaton had brought an action against both United States Rubber Company and Dr. Edmond Haggard to recover for injuries she sustained while working for the corporation. Her injuries were allegedly aggravated because of the malpractice of Dr. Haggard who was employed as a physician by the corporation and was in charge of its first aid department. The Court found that the Workmen's Compensation Act provided the exclusive remedy in so far as the company was concerned, but the Court permitted the action against Dr. Haggard, stating:

In other jurisdictions where such an action is permitted, [malpractice action against company physician] it is based upon the theory that the physician, *whether hired by the employer or not, is a third party within the contemplation of their workmen's compensation act. . .*

This we believe to be the correct rule. (emphasis added)

Under the common law a doctor faced potential liability for malpractice; he retained

---

4. *Seaton v. United States Rubber Company et al.*, (1945) 223 Ind. 404, 61 N.E.2d 177.

5. IC 22-3-2-6. Rights and remedies of employee exclusive.—The rights and remedies herein granted to an employee subject to this act [22-3-2-1—22-3-6-3] on account of per-

sonal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death.

this liability when the Court in *Seaton* held that a doctor was a third party within the ambit of the Act. We do not believe the legislature's subsequent insertion of the words, "and not in the same employ" was intended to abrogate the Court's interpretation that the Act failed to immunize physicians.

Although the Court in *Seaton* merely said that a physician was a third party under the Act without addressing why be belonged in this classification, other cases have held that when physicians practice medicine they are independent contractors, *Iterman et al. v. Baker*, (1938) 214 Ind. 308, 15 N.E.2d 365, and that independent contractors are third parties under the Act. See *Merritt v. Johnson*, (S.D.Ind.1961) 190 F.Supp. 454. Amending IC 22–3–2–13 certainly did not change a doctor's status from third party/independent contractor to that of fellow employee.[6] When the legislature amended IC 22–3–2–13, they must be deemed to have been cognizant of the court's determination that physicians employed by corporations were liable as third parties, and in light of this knowledge, they retained the employee's right to proceed against a third party. Thus, the common

law right of an injured employee to maintain an action against a physician for malpractice remained unaltered because it was not expressly or by necessary inference curtailed or denied.[7] We note that while a measure of liberality is indulged in construing the legislative definition of "employee"[8] to the end that an injured workman or his dependents may not be deprived of the benefits of the Act, *Meek v. Julian*, (1941) 219 Ind. 83, 36 N.E.2d 854, we find no similar position toward expanding the construction of "in the same employ" for purposes of permitting individuals to escape liability. The suggestion that the legislature intended, by this amendment, to include the company physician as a fellow employee of the injured industrial worker is a startlingly illogical concept. To hold that these doctors were not third parties under the Act would be inconsistent with *Seaton's* interpretation of the Act's intent as well as cases outside the area of workmen's compensation law which have consistently held that a doctor, even though employed by an entity, is personally liable as an independent contractor when he engages in the practice of medicine.[9]

6. Amending the statute did not change any individual's status. Those persons who were fellow employees or independent contractors prior to the statute's amendment, retained their respective statuses. The amended statute was drafted with the objective of insuring that a particular class of industrial accidents was covered—that at least for that class of accidents, industry owed its workers an obligation; therefore, if in the course of the employment relationship an employee is injured due to the actions of a fellow employee, IC 22–3–2–13 immunizes that fellow employee from liability, but the immunization is because of the type of accident involved, not because of a direct objective to immunize particular persons.

In essence an award under the Act is based upon a statutory jurisdiction over a certain class of industrial accidents and only as a derivative thereof over those persons connected with them. *O'Dell v. State Farm Mutual Automobile Insurance Company*, (1977) Ind.App., 362 N.E.2d 862, 866. An injury sustained due to the malpractice of a physician does not come within the class of industrial accidents which the Act was designed to encompass.

7. "If there is no strong reason of compensation policy for destroying common-law rights as to

various classes of third parties, then, every presumption should be on the side of preserving those rights, once basic compensation protection has been assured." 2A A. Larson, Workmen's Compensation Law § 72.50 at 14–95.

8. Ind. Code 22–3–6–1(b).

9. Physicians employed by a hospital and furnished by the hospital to its patients remain independent contractors. *Iterman et al. v. Baker*, (1938) 214 Ind. 308, 15 N.E.2d 365; *Fowler v. Norways Sanitorium et al.*, (1942) 112 Ind. App. 347, 42 N.E.2d 415. Physician employed by railroad to treat railroad employees in company hospital remains liable. See *Wroblewski v. Pullman Co.*, (1928) 87 Ind.App. 101, 166 N.E. 666; *Wabash R. Co. v. Kelley*, (1898) 153 Ind. 119, 52 N.E. 152, 153 Ind. 119, 54 N.E. 752.

We also note that under Indiana's Professional Medical Corporation Act, the legislature expressly manifested the desire that this Act "not modify any law applicable to the relationship between a person furnishing professional medical service and a person receiving such service, including liability arising out of such professional service." Ind.Code 23–1–14–14. Thus,

 Regardless of the extent of their affinity with the corporation, these physicians were not under the corporation's control when they exercised their professional skills. Their professional status and concomitant freedom to exercise discretion in their medical treatment prevented the corporation from controlling their actions. It has generally been recognized that the right to control not only the end result of another's labors, but also the manner in which the work is performed, is the dispositive criterion in determining whether an individual is an independent contractor or an employee. B. Small, Workmen's Compensation Law of Indiana § 4.2, at 66 (1950); Note, *The Malpractice Liability of Company Physicians*, 53 Ind.L.J. 585, 588 (1978). Because of the peculiar nature of the profession, "a licensed physician may not accept directions and instructions in diagnosing and treating ailments from a corporation or an individual who is not a licensed practitioner." *Iterman et al. v. Baker*, 15 N.E.2d at 370. International Harvester, therefore, could not control the manner in which these physicians rendered treatment to Ross, and consequently, they remained independent contractors.

The liability of these physicians arose from their independent exercise of medical judgment, that is, it arose from their doctor-patient relationship with Ross and not from the employer-employee relationship which the Act was designed to regulate.[10] We have not permitted physicians to escape liability by working for hospitals or forming medical corporations, and it is our opinion that the Workmen's Compensation Act was, likewise, never intended to abrogate the rights of an employee who stands in the shoes of a patient, from suing a doctor who treats him.

 This court is not persuaded that we should sanction protection of company physicians while at the same time hold liable independent physicians who provide identical services. In either circumstance, the liability arises because of the individual doctor's exercise of medical judgment. Where that judgment is exercised, i. e., upon the company's premises as opposed to the physician's private office, should not be the determinative factor as to whether or not an individual may bring an action for medical malpractice since in both instances, the physician controls the manner of medical treatment. To hold otherwise would encourage the company physician to be less assiduous.

That independent professions by the fact of business contact with the employer should be absolved of responsibility for mistake, avoidable or unjustified neglect resulting in secondary affliction, seems obnoxious to the purpose and spirit of such a statute. To so hold might induce industry to encourage quackery, and place a premium upon negligence, inefficiency and wanton disregard of the professional obligations of medical departments of industry, toward the artisan. *Duprey v. Shane*, (1952) 39 Cal.2d 781, 249 P.2d 8; *Hoffman v. Rogers*, (1972) 22 Cal. App.3d 655, 99 Cal.Rptr. 455. Clearly, forcing the wrongdoer to bear the cost of his wrong,[11] rather than industry, will have a

the legislature wanted to insure that physicians could not escape liability by being employed by medical corporations. This statutory provision evidences the Indiana legislature's determination to preserve the doctor-patient relationship and the potential liability attendant thereto.

10. "As a 'non-laborer' the company physician does not participate in the employer-employee *quid pro quo*; since it is extremely unlikely that a physician would ever be injured by a fellow employee, he realistically gives [would give] up no right to bring suit in return for his own immunity from suit. Similarly, as a non-laborer, the company physician does not readily figure in problems of industrial discord."

*The Malpractice Liability of Company Physicians*, *supra* note 3, at 597.

11. We note that liability for malpractice is based upon negligence, a tort, and a tort recovery is for damages for the full wrong, whereas the employee's recovery under the Workmen's Compensation Act is fixed by statute at a lower level of compensation. The divergence arises from the different purposes of the two recoveries. Unlike recovery for malpractice, recovery under the Act is not based upon wrongful conduct by the employer; it is a contractual liability on the employer's part. The employee in-

salutory effect in that it will operate as an incentive for careful conduct.

We find nothing in our Workmen's Compensation Act which indicates the Act was intended to shield a physician from the legal obligations entailed by the doctor-patient relationship.[12] We, therefore, hold that these physicians were not immune from liability by virtue of IC 22–3–2–13 when they engaged in the practice of medicine. We emphasize, however, that Ross must still prove the negligence which he alleges.

Because Mr. Ross' claim is not barred by the exclusive remedy provisions of the Act, we also reverse the judgment entered against Mrs. Ross.

> The law in Indiana is clear that a wife is entitled to recover for loss of consortium against a wrongdoer who has injured her husband. . . [A] cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer.

*Arthur v. Arthur*, (1973) 156 Ind.App. 405, 296 N.E.2d 912. The Workman's Compensation Act would, thus, likewise not preclude Mrs. Ross' separate claim for damages because of the doctors' alleged malpractice. *See O'Dell v. State Farm Mutual Automobile Insurance Company*, (1977) Ind.App., 362 N.E.2d 862; *Arthur, supra.*

We reverse.

MILLER and YOUNG, JJ., concur.

jured because of malpractice should have the right to be made whole—not just partly whole.

**12.** This court renders no opinion as to the status of an employed physician when he is engaged in employment related activities outside the practice of medicine. We would merely indicate that the cases which have rejected the dual capacity theory in Indiana have been confined to situations where an employee was proceeding against one entity (employer/corporation) claiming that it held two statuses at the *same* time. *Kottis v. United States Steel Corp.*, (7th Cir. 1976) 543 F.2d 22; *Needham v. Fred's Frozen Foods, Inc.*, (1977) Ind.App., 359 N.E.2d 544.