FILED

Nov 09 2023, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Colby A. Barkes
Jeffrey S. Wrage
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Michael A. Sarafin
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Laurie Gardner,

*Appellant-Plaintiff,*

v.

Anonymous Physician,

*Appellee-Defendant*

November 9, 2023

Court of Appeals Case No.
23A-CT-345

Appeal from the Lake Superior
Court

The Honorable Calvin Delee
Hawkins, Judge

Trial Court Cause No.
45D02-2004-CT-417

**Opinion by Chief Judge Altice**
Judges May and Foley concur.

**Altice, Chief Judge.**

## Case Summary

[1]     Laurie Gardner, a nurse at St. Mary Medical Center, Inc. (the Hospital), filed a

proposed complaint against Anonymous Physician for medical malpractice.

Anonymous Physician sought dismissal, arguing that because he and Gardner

were in the same employ and she sustained a workplace injury, her exclusive remedy was under the Worker's Compensation Act (WCA). The trial court dismissed the medical malpractice action based on Ind. Trial Rule 12(B)(1) for lack of subject matter jurisdiction.

[2] On appeal, Gardner argues that physicians are third parties under the WCA and thus are not shielded from claims of medical negligence brought by an employee of the same company. We agree that the exclusivity provision of the WCA does not immunize a physician from claims for medical negligence *arising from a doctor-patient relationship with the injured party*, who is in the same employ as the physician. The exclusivity provision, however, does apply to claims brought against a physician that are unrelated to the physician's medical treatment of a fellow employee.

[3] Reading the proposed complaint in a light most favorable to Gardner, we conclude that some of her allegations of malpractice appear to have arisen out of a doctor-patient relationship between her and Anonymous Physician and not simply from their common employment at the Hospital. While Gardner may not proceed against Anonymous Physician based on his treatment of another patient or his actions as a medical director at the Hospital, she may pursue a medical malpractice action related to any treatment she received from Anonymous Physician for her workplace injury. Accordingly, the trial court erred in dismissing the proposed complaint.

[4] We reverse and remand.

## Facts & Procedural History

On September 1, 2016, Gardner was exposed to crusted (Norwegian) scabies in the course and scope of her employment as a nurse at the Hospital. She contracted scabies from contact with a patient and then unknowingly exposed her family, resulting in family members contracting the skin infection.

Gardner filed a worker's compensation claim against the Hospital in March 2018, which was settled by a compromise agreement in October 2019. In the meantime, on May 23, 2018, she filed a proposed complaint against Anonymous Physician with the Indiana Department of Insurance (the DOI). Gardner asserted the following negligence allegations:

> 7. [Anonymous Physician] failed to protect Plaintiff from exposure to and failed to diagnose the scabies which led to a delay in appropriate treatment. Said failure to diagnose caused Plaintiff to unknowingly expose her family to scabies which resulted in her family members also contracting scabies.

> 8. [Anonymous Physician] negligently directed Plaintiff's care by failing to provide appropriate and timely treatment and for his failure to refer Plaintiff to medical care providers specializing in the treatment of the scabies condition which Plaintiff contracted at her place of employment.

*Appendix* at 27.

On September 15, 2022, while the matter still pended before the DOI, Anonymous Physician sought a preliminary determination of law by the trial court that the proposed complaint should be dismissed pursuant to T.R.

12(B)(1) for lack of subject matter jurisdiction. Anonymous Physician argued that dismissal was warranted because Gardner "exhausted her sole remedy, a worker's compensation claim, upon a workplace accident and subsequent medical care which occurred when she and [Anonymous Physician] were employed by subsidiaries of the same corporate parent(s)." *Appendix* at 13.

[8] Among the limited exhibits provided by Anonymous Physician in support of his motion to dismiss was the affidavit of Nancy Moser, Vice President for Corporate Compliance and Quality/Risk Management for Community Healthcare System, which includes, among others, Community Foundation of Northwest Indiana, Inc. (CFNI), the Hospital, St. Catherine Hospital, Inc. (SCH), Munster Medical Research Foundation, Inc. (MMRF), and Community Care Network, Inc (CCNI). The corporate organizational structure of these entities is summarized by the following flow chart:

**CFNI**



**THE HOSPITAL, MMRF & SCH**

Each 100% held by CFNI



**CCNI**

Equally held (1/3) by the Hospital, MMRF & SCH

According to Moser, Anonymous Physician was at all relevant times an employee of CCNI[1] and contracted as the Medical Director of the Hospital's Infection Control and Wound Care Department.

[9] Following briefing and oral argument on the T.R. 12(B)(1) motion, the trial court issued an order on January 30, 2023, dismissing Gardner's proposed complaint. Gardner now appeals.

## Discussion & Decision

[10] Where a party defends against a negligence claim based on the exclusivity provision of the WCA, the defense is properly advanced through a T.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction. *See GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *Id.* Ultimately, the opponent of subject matter jurisdiction has the burden of proving the lack of jurisdiction. *Curry v. D.A.L.L. Anointed, Inc.*, 966 N.E.2d 91, 95 (Ind. Ct. App. 2012), *trans. denied*.

[11] Where jurisdictional facts are not in dispute or where they are disputed but the trial court ruled on a paper record without conducting an evidentiary hearing, we afford no deference to the trial court on appeal. *GKN Co.*, 744 N.E.2d at

---

[1] CCNI is a multi-specialty medical practice group and a subsidiary of the Hospital, MMRF, and SCH.

401. In other words, our review is de novo in these circumstances because we are in as good a position as the trial court to determine the existence of subject matter jurisdiction, and we will affirm on any legal theory the evidence of record supports. *Id.*

[12] The WCA provides compensation to employees for accidental injuries that arise out of, and in the course of, employment, and its exclusive remedies provision – Ind. Code § 22-3-2-6 – precludes a trial court from hearing a common law action brought by the employee for the same injuries. "It is the employer-employee relationship that defines the parameters of the immunity granted by the WCA's exclusive remedy provision." *Brenner v. All Steel Carports, Inc.*, 122 N.E.3d 872, 877 (Ind. Ct. App. 2019) (citing *Ross v. Schubert*, 388 N.E.2d 623, 627 (Inc. Ct. App. 1979), *trans. denied*). Thus, the WCA does not reach beyond the employment relationship to benefit a third party. *Id.*

[13] I.C. § 22-3-2-13 specifically addresses the right of an injured employee to pursue remedies in tort against a third party (as well as an employer's rights to subrogation) and provides in relevant part:

> Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in some other person than the employer *and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee, or the injured employee's dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article.

I.C. § 22-3-2-13(a) (emphasis supplied). "With this provision the WCA creates an exception to the exclusive remedy provision for actions to be brought against third parties, namely someone other than the employer or a fellow employee, in which legal liability was created by a WCA-compensable injury." *Brenner*, 122 N.E.3d at 877; *see also Walls v. Markley Enterprises, Inc.*, 116 N.E.3d 479, 483 (Ind. Ct. App. 2018) ("Although the [WCA] bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee."), *trans. denied*.

[14] There is no dispute in this case that Gardner's injuries arose out of and in the course of her employment as a nurse at the Hospital. Indeed, she contracted scabies from a patient at the Hospital where both she and Anonymous Physician worked. Gardner, however, contends that Anonymous Physician was an independent contractor at the Hospital by virtue of his status as a physician and that, therefore, he is a third party against whom she can pursue a medical malpractice action.

[15] Gardner acknowledges that at all relevant times Anonymous Physician was an employee of CCNI, a multi-specialty medical practice group, and that he worked at the Hospital as Medical Director of Infection Control and Wound Care. Further, the undisputed evidence establishes that Anonymous Physician's employer, CCNI, was a subsidiary of the Hospital and two other hospitals with the three hospitals all being wholly owned subsidiaries of CFNI.

[16]     Relevant here, the WCA's definition of "employer" provides:

> A corporation, limited liability company, or limited liability partnership that controls the activities of another corporation, limited liability company, or limited liability partnership, or a corporation and a limited liability company or a corporation and a limited liability partnership that are commonly owned entities, or the controlled corporation, limited liability company, limited liability partnership, or commonly owned entities, and a parent corporation and its subsidiaries shall each be considered joint employers of the corporation's, the controlled corporation's, the limited liability company's, the limited liability partnership's, the commonly owned entities', the parent's, or the subsidiaries' employees for purposes of IC 22-3-2-6 and IC 22-3-3-31.

I.C. § 22-3-6-1(a); *see also Hall v. Dallman Contractors, LLC*, 51 N.E.3d 261, 264-66 (Ind. Ct. App. 2016) (addressing this statutory provision in the context of "multiple tiers of subsidiaries" and holding that the parent corporation and its subsidiaries – one a direct subsidiary and the other a third-tier subsidiary – were all joint employers under the WCA). Thus, the Hospital and CCNI were joint employers of Anonymous Physician for purposes of the exclusivity provision of the WCA.

[17]     Nonetheless, Gardner argues that Anonymous Physician cannot be considered to have been in the same employ as her because "as a matter of law physicians are independent contractors and not 'fellow employees.'" *Appellant's Brief* at 16. She relies on *Ross v. Schubert*, 388 N.E.2d 623 (Ind. Ct. App. 1979), for this proposition.

[18] *Ross* involved a factory worker, Ross, who received medical treatment from physicians employed in a clinic located inside International Harvester's plant. The physicians were salaried employees at the plant. Ross sued the physicians for damages based on alleged medical negligence that occurred during their treatment of him for a nonindustrial accident. At trial, the jury was instructed, over Ross's objection, that if the defendant doctors were employees of International Harvester, then they were immune from a claim of damages based on malpractice. Ross appealed after receiving an adverse jury verdict.

[19] On appeal, this court held that the "fellow employee immunity provisions" of the WCA do not protect a company physician from a claim of medical negligence brought by an employee of the same company. *Id.* at 625 (internal quotations omitted). The *Ross* court explained:

> After carefully studying the history of the [WCA] and examining its provisions, we are unable to discern from the Act any legislative design to immunize physicians from medical malpractice claims or to interfere with the customary physician-patient relationship. It is our opinion that it would torture the Indiana legislature's intent, as evidenced by its objectives in enacting the [WCA], to let the simple rubric of "in the same employ" insulate physicians from liability arising out of the performance of professional medical services.

*Id.* at 626.

[20] Anonymous Physician recognizes the holding in *Ross* but argues that it has been eroded over time and should no longer be followed. This requires a close look at the underpinnings of *Ross*.

[21] The *Ross* court observed that prior to the language "in the same employ" being added to the WCA, the Indiana Supreme Court had adopted the rule that "the physician, whether hired by the employer or not, is a third party within the contemplation of the [WCA]." *Id*. at 627 (quoting *Seaton v. U.S. Rubber Co.*, 61 N.E.2d 177, 181 (Ind. 1945)). The *Ross* court "d[id] not believe the legislature's subsequent insertion of the words, 'and not in the same employ' was intended to abrogate the [Supreme] Court's interpretation that the Act failed to immunize physicians." *Id*. at 628.

[22] Additionally, the *Ross* court looked to cases outside the area of worker's compensation law that had "consistently held that a doctor, even though employed by an entity, is personally liable as an independent contractor when he engages in the practice of medicine." *Id*. at 629. Of particular note here, the court relied on *Iterman v. Baker*, 15 N.E.2d 365 (Ind. 1938), which held that physicians employed by a professional medical corporation were independent contractors and that because the corporation could not legally engage in the practice of medicine, it could not be held vicariously liable for the medical negligence of its physicians. *Id*. at 369-71.

[23] The holding of *Iterman* eroded over time with the enactment of the Professional Corporation Act of 1983,[2] which "stands as a pronouncement of public policy concerning a corporation's vicarious liability for the acts of its employee-

---

[2] Ind. Code §§ 23-1.5-1-1 to -5-2.

physician." *Sloan v. Metro. Health Council of Indianapolis, Inc.*, 516 N.E.2d 1104, 1107 (Ind. Ct. App. 1987). In *Sword v. NKC Hosps., Inc.*, the Supreme Court acknowledged the demise of *Iterman* and that "courts no longer allow hospitals to use their inability to practice medicine as a shield to protect themselves from liability." 714 N.E.2d 142, 149 (Ind. 1999). The Court recognized, however, that physicians can be either employees of a hospital or independent contractors and held that hospitals may be subject to vicarious liability for the negligence of its independent contractor physicians under the theory of apparent or ostensible agency. *Id*. at 149-52; *see also Sloan*, 516 N.E.2d at 1109 ("We hold that where the usual requisites of agency or an employer-employee relationship exist, a corporation may be held vicariously liable for malpractice for the acts of its employee-physicians.).

[24] It is evident that *Ross's* independent contractor rationale and reliance on *Iterman* no longer has sound footing. But this was not the entire basis for the holding in *Ross*. On the contrary, the court emphasized the Supreme Court's distinct holding in *Seaton* (that is, treating physicians are third parties under the WCA, whether hired by the employer or not). The court then noted that when amending I.C. § 22-3-2-23 to include "and not in the same employ," the legislature "must be deemed to have been cognizant of the court's determination that physicians employed by corporations were liable as third parties, and in light of this knowledge, they retained the employee's right to proceed against a third party" and "did not expressly or by necessary inference curtail[] or den[y this common law right]." *Ross*, 388 N.E.2d at 628. The court

continued: "The suggestion that the legislature intended, by this amendment, to include the company physician as a fellow employee of the injured industrial worker is a startlingly illogical concept."[3] *Id*.

After noting that International Harvester had no control over the manner in which the physicians rendered treatment to Ross, the court stated:

> *The liability of these physicians arose from their independent exercise of medical judgment, that is, it arose from their doctor-patient relationship with Ross and not from the employer-employee relationship which the Act was designed to regulate.* We have not permitted physicians to escape liability by working for hospitals or forming medical corporations, and *it is our opinion that the [WCA] was, likewise, never intended to abrogate the rights of an employee who stands in the shoes of a patient, from suing a doctor who treats him*.
>
> This court is not persuaded that we should sanction protection of company physicians while at the same time hold liable independent physicians who provide identical services. In either circumstance, the liability arises because of the individual doctor's exercise of medical judgment. Where that judgment is exercised, i.e., upon the company's premises as opposed to the physician's private office, should not be the determinative factor as to whether or not an individual may bring an action for

---

[3] The *Ross* court observed in a footnote:

> The amended statute was drafted with the objective of insuring that a particular class of industrial accidents was covered – that at least for that class of accidents, industry owed its workers an obligation; therefore, if in the course of the employment relationship an employee is injured due to the actions of a fellow employee, IC 22-3-2-13 immunizes that fellow employee from liability, *but the immunization is because of the type of accident involved, not because of a direct objective to immunize particular persons*…. An injury sustained due to the malpractice of a physician does not come within the class of industrial accidents which the [WCA] was designed to encompass.

*Id*. at n.6 (emphasis supplied).

medical malpractice since in both instances, the physician controls the manner of medical treatment. To hold otherwise would encourage the company physician to be less assiduous…. Clearly, forcing the wrongdoer to bear the cost of his wrong, rather than the industry, will have a salutary effect in that it will operate as an incentive for careful conduct.

We find nothing in [the WCA] which indicates the Act was intended to shield a physician from the legal obligations entailed by the doctor-patient relationship. We, therefore, hold that these physicians were not immune from liability by virtue of IC 22-3-2- when they engaged in the practice of medicine.

*Id*. at 629-30 (emphases supplied and footnotes omitted).[4]

[26] We do not believe that Anonymous Physician has made a good case for abandoning the holding of *Ross*, which, though battered, has remained standing since 1979 and has not been altered by any of the multiple amendments to I.C. § 22-3-2-13 since that time. Its holding, however, does not extend so far as Gardner attempts to employ it. *Ross* does not hold that a physician can never benefit from the WCA's fellow employee immunity provision. It holds only that immunity does not apply to claims of medical negligence arising out of a doctor-patient relationship between the claimant and the physician.

---

[4] In *Tarr v. Jablonski*, this court declined to extend the *Ross* exception to paramedics, observing that the essence of the exception was "the independent professional judgment which a physician must necessarily exercise." 569 N.E.2d 378, 380 (Ind. Ct. App. 1991), *trans. denied*.

[27]     Here, Gardner's proposed complaint plainly shows that she is seeking, at least in part, to impose liability on Anonymous Physician for actions unrelated to any doctor-patient relationship between the two of them. Gardner was exposed to and contracted scabies from a patient while working as a nurse at the Hospital. This injury was directly related to her employment relationship, and Anonymous Physician was not a third party while working alongside her; he was her coworker. Gardner's exclusive remedy for this workplace injury was through the WCA, and she cannot sue Anonymous Physician for negligence based on him allegedly failing to timely diagnose the patient and protect Gardner from exposure to scabies or for his general handling of the scabies outbreak in his role as medical director.

[28]     That said, to the extent Anonymous Physician directly engaged in a doctor-patient relationship with Gardner after her exposure and exercised independent medical judgment to treat her, his status then changed to that of a third party, making him subject to liability for any aggravation of her workplace injury resulting from his negligent treatment of her. While Gardner's proposed complaint does not contain a positive assertion that an actual doctor-patient relationship existed between her and Anonymous Physician, the allegations suggest – sufficiently to withstand dismissal – that such a relationship existed (namely, Gardner alleged that Anonymous Physician negligently directed her care, failed to provide appropriate and timely treatment, and failed to refer her to appropriate specialists for treatment). This matter may be fleshed out more

on remand, but at this early stage and on this limited record,[5] Anonymous Physician has failed to establish that the trial court lacked jurisdiction to hear this medical malpractice action.

[29] We reverse and remand for further proceedings consistent with this opinion.

May, J. and Foley, J., concur.

---

[5] Anonymous Physician did not present any affidavits or other evidence to show the absence of a doctor-patient relationship with Garnder related to her diagnosis and treatment for scabies.