537 So.2d 1355 (1989)
Robie L. KIGHT, Jr. & Rhonda C. Kight
v.
SHEPPARD BUILDING SUPPLY, INC.
No. 58136.
Supreme Court of Mississippi.
January 25, 1989.
*1356 Billy W. Keyes, Peter L. Corson, Ann E. Wedding, Keyes, Moss, Piazza & Woods, Jackson, for appellant.
Thomas W. Crockett, David C. Dunbar, Watkins, Ludlam & Stennis, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
SULLIVAN, Justice, for the Court:
Sheppard Building Supply, Inc., filed suit against Robie L. Kight for the collection of sums due on an open account. The sums due were for materials and supplies purchased and used by the prime contractor on an apartment complex project owned by Kight. This appeal is from a final judgment entered in favor of Sheppard Building Supply on January 13, 1987, in the Circuit Court of the First Judicial District of Hinds County, Mississippi, by a trial judge sitting without a jury.
Briefly, the facts reveal that on June 14, 1985, Robie Kight, as owner, and James Britt, d/b/a J.M. Construction Company, as prime contractor, entered into an agreement for the construction of an eight unit apartment complex at 11 Bellevue Drive in Jackson, Mississippi. As prime contractor, Britt contracted separately with various sub-contractors to furnish materials and labor for the project. Sheppard Building Supply, among others, furnished materials to Britt.
It became apparent in September, 1985, that Britt was having trouble paying all of his sub-contractors, including Sheppard Building Supply. As a result, accounts on the apartment project became past due. One of those past due accounts was Sheppard Building Supply.
*1357 Some time around the 10th of September, 1985, Britt approached Kight about his financial problems. About this same time, Sheppard Building Supply also contacted Kight about Britt's past due account. Kight assured Sheppard that the account would be brought current, and that he and Britt were negotiating to allow Britt to continue his work on the project. From this point forward, Sheppard Building Supply relied exclusively on Kight's assurances that the indebtedness would be worked out.
As a result of their meeting, Britt and Kight mutually agreed that Kight would henceforth make payments directly to Sheppard Building Supply, among others, in order to bring current the past due account on Kight's apartment complex project ("Bellevue Project"). Britt and Kight employed an attorney of Kight's choosing to draft an appropriate agreement, and this agreement was executed on September 20, 1985.
The agreement stated that it would amend the original contract. It listed various sub-contractors, including Sheppard Building Supply, to whom Britt was indebted on the Bellevue Project, and further stated that Kight would directly pay the listed bills and sub-contractors. The problem with the agreement is that it does not state either the amount Kight was to pay the listed sub-contractors, or the duration of this obligation.
Pursuant to the agreement, on September 24, 1985, Kight and Britt personally delivered a check to Sheppard Building Supply in the amount of $7,255.11. This brought the past due account of Britt current, but did not pay it in full. At some point following delivery of the check, but on or before September 25, 1985, Britt presented the agreement to Sheppard's in an effort to assure them that Kight would thereafter pay for any materials ordered for the Bellevue Project. Ultimately, in reliance on the agreement, Sheppard's extended credit to Britt for the purchase of additional materials for the Bellevue Project. From this point forward, Sheppard Building Supply looked solely to Kight for payment.
As a consequence of this agreement, Kight no longer issued progress payments to Britt, who would in turn pay his suppliers, per the original contract. Instead, Kight paid monies directly to the listed suppliers, including the payment to Sheppard Building Supply on September 24, 1985, in the amount of $7,255.11. With the exception of Sheppard Building Supply, Kight continued to pay monies directly to the listed suppliers following execution of the agreement.
On October 25, 1985, Kight closed the permanent loan on the Bellevue Project at which time Britt was paid in full. According to affidavits filed in connection with this closing, neither Kight nor his attorney had any record notice of any claims by materialmen or sub-contractors. However, on November 7, 1985, Sheppard Building Supply filed a complaint in the Circuit Court of Hinds County, First Judicial District, alleging that Kight was responsible for the payment of $36,106.26, plus interest, for materials supplied to Britt on the Bellevue Project. A non-jury trial was conducted on January 7, 1987, after which the court entered final judgment holding that Kight was liable to Sheppard Building Supply per the September 20, 1985, agreement in the principal amount of $36,106.26, plus interest until thereafter paid.
The lower court found in essence that a limited agency relationship existed between Kight and Britt per their September 20, 1985, agreement entitling Sheppard Building Supply to proceed directly against Kight for the unpaid balance on materials purchased and used by Britt on Kight's Bellevue Project. The trial judge went beyond the face of the agreement in question in an attempt to ascertain its true meaning. The trial judge considered the live testimony of Kight and Britt regarding their purpose in executing the agreement, and also heard testimony regarding the actions of the various parties in consequence of the agreement. Kight challenges this finding on appeal, arguing that the lower court erred in finding that an agency relationship existed when in fact the relationship remained *1358 that of owner  independent contractor.
In interpreting the writing at issue, the cardinal rule of construction is to give effect to the mutual intentions of the parties. Hoerner v. First National Bank of Jackson, 254 So.2d 754, 759 (Miss. 1971). Where, as here, the writing is ambiguous, courts are obligated to pursue the intent of the parties by resort to parol evidence. Barnett v. Getty Oil Company, 266 So.2d 581, 586 (Miss. 1972). In addition, the construction which the parties have placed upon the contract, or what the parties to the contract do thereunder, is relevant extrinsic evidence, and often the best evidence, of what the contract requires them to do. Delta Wildlife & Forestry, Inc. v. Bear Kelso Plant., Inc., 281 So.2d 683, 686 (Miss. 1973). Finally, the vagueness and ambiguity found in the writing at issue is construed more strongly against the party preparing it. Hardy v. First National Bank of Vicksburg, 505 So.2d 1021, 1023 (Miss. 1987), citing Stampley v. Gilbert, 332 So.2d 61, 63 (Miss. 1976).
As regards our standard of appellate review, the interpretation of an ambiguous writing by resort to extrinsic evidence presents a question of fact. Dennis v. Searle, 457 So.2d 941, 945 (Miss. 1984). Likewise, the question of whether an agency relationship has been established, or whether Britt is an independent contractor, presents a question of fact. Elder v. Sears, Roebuck & Co., 516 So.2d 231, 232-33, 236 (Miss. 1987); Turner v. Williams, 257 So.2d 525, 526 (Miss. 1972).
Finally, a circuit judge sitting without a jury is accorded the same deference with regard to these factual findings as is a chancellor. Hardy v. First National Bank, supra. Therefore, the trial judge's interpretation of the September 20th agreement, and her finding of the existence of the relationship of principal and agent are findings of fact which will not be disturbed unless manifestly wrong.
Needless to say, the testimony at trial was at variance on more than one occasion. Kight testified that the idea behind the agreement was to bring the past due accounts on the Bellevue Project current so that construction could continue on schedule. He testified that the initial check in the amount of $7,255.11 exhausted his obligation per the agreement, and that he did not make a continuing guarantee to Sheppard Building Supply. Kight also testified, however, that following execution of the agreement, he continued to make direct payments to other suppliers listed in the agreement on behalf of Britt.
James Britt testified that the agreement was entered into primarily for his benefit, even though Kight would also benefit by having the Bellevue Project completed on schedule. Britt's testimony was that he continued to be responsible for purchasing materials and completing the project according to the original contract. He also testified that he did not expect Kight to act as a continuing guarantor of his bills; instead, the avowed purpose was to bring Britt's past due accounts current in the hope that suppliers would resume credit sales to Britt, and disbursements under the original contract could resume as scheduled. As earlier shown, however, disbursements did not return to normal after execution of the agreement.
All of the testimony on Sheppard's behalf established that the agreement at issue formed the basis for the extension of additional credit to Britt on the Bellevue Project. Though admittedly not a party to the agreement, Sheppard Building Supply assumed that the intent of the agreement was to induce Sheppard Building Supply to extend additional credit to Britt, which it did.
In her findings of fact and conclusions of law, the trial judge found that Sheppard Building Supply was entitled, and did in fact rely on the September 20th agreement to extend additional credit to Britt, and that Britt used this credit to purchase materials which went into the construction of Kight's Bellevue Project. The trial judge also found that following the execution of the agreement, Kight did not advance any progress payments to Britt, but instead took complete control of the money and *1359 accepted full responsibility for paying the suppliers and sub-contractors listed in the agreement, a function formerly belonging to Britt. Kight did not, however, make any direct payments to Sheppard Building Supply other than the initial payment of $7,255.11.
Based on these subsidiary fact findings, the trial judge found that Britt became the agent of Kight for the purpose of making purchases of materials necessary for the completion of the project. Sheppard Building Supply relied on the agreement as it was entitled to, and the parties' actions pursuant to the agreement evidenced their intent to make Kight the principal in charge of paying the suppliers listed. As a result, final judgment was entered awarding Sheppard Building Supply a judgment against Kight in the amount of $36,106.26 plus interest.
Our law recognizes that a person may be an independent contractor as to certain work and a mere agent as to other work for the same employer. See Carroll v. E.G. Laughlin & Sons, 220 Miss. 535, 71 So.2d 461 (1954); Mills v. Jones, 213 Miss. 680, 56 So.2d 488 (1952). We have also recognized that the subsequent actions of the parties pursuant to a contract may support a finding that the original contract has been modified to an extent consistent with the subsequent course of conduct. See Stinson v. Barksdale, 245 So.2d 595, 597-98 (Miss. 1971). Put otherwise, what the parties to a contract do thereunder is often the best evidence of what the contract requires them to do. Delta Wildlife, supra.
The difficulty, however, is in deciding what status Britt occupied per the agreement, for the English language does not permit the laying of a "concise definition that will furnish any universal formula, covering all cases." Kisner v. Jackson, 159 Miss. 424, 427-28, 132 So. 90, 91 (1931). This Court has recently observed that the line between an agent and an independent contractor is not really a line but a "twilight zone," with the answer inevitably revolving around the idea of control. Fruchter v. Lynch Oil Co., 522 So.2d 195, 199 (Miss. 1988).
Keeping in mind our standard of review, and applying the substantive rules to the facts, it is not unreasonable to conclude that Kight exercised complete control over the payment of the suppliers and sub-contractors listed in the agreement of September 20, 1985, and to this limited extent, Britt ceased to function as an independent contractor. In this situation, Britt became nothing more than the limited agent of Kight with authority to purchase materials for the Bellevue Project on credit from the various suppliers listed in the agreement. As the trial court found, by executing the agreement, Kight set in motion a series of events which induced Sheppard Building Supply to act in reliance on Britt's apparent authority as an agent, and Sheppard Building Supply acted reasonably in assuming that Britt's presentation of the agreement conferred sufficient authority on Britt to bind Kight on debts due on the Bellevue account.
In the end, the answer rests on the respective weight and credibility given to the evidence offered at trial. By necessity, we decline to disturb such findings of the trial judge sitting without a jury. In short, the trial judge's findings are supported by substantial evidence, and therefore, are not manifestly erroneous. Having altered the nature of their contractual relationship via the September 20th Agreement, and the course of conduct thereunder, Kight is not entitled to a reversal of the trial judge's order.
The Order of the Circuit Court of the First Judicial District of Hinds County, awarding Sheppard Building Supply a judgment against Kight in the amount of $36,106.26 plus interest is hereby affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.