IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-CA-00888-SCT

*JENNIE RUSSELL*

*v.*

*DR. EDWIN R. ORR AND PONTOTOC HEALTH SERVICES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/95 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROY O. PARKER, JR. |
| ATTORNEYS FOR APPELLEES: | JAMES A. BECKER, JR. |
| | L. F. SAMS, JR. |
| | JOHN G. WHEELER |
| | ROBERT K. UPCHURCH |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/30/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Ms. Jennie Russell appeals this medical malpractice action from a grant of summary judgment in favor of defendants Dr. Edwin R. Orr and Pontotoc Health Services, Inc. We conclude there are genuine issues of material fact in dispute regarding the employment status of Dr. Orr and Russell. Further, even assuming that Russell and Dr. Orr were co-employees of PHS, neither Dr. Orr nor PHS is immune from liability under Miss. Code Ann. § 71-3-9 (1995). Accordingly, the grant of summary judgment by the circuit court is reversed and the case remanded for a full trial on the merits.

I.

¶2. On December 25, 1989, Ms. Jennie Russell injured her ankle while working as a cook for her employer, Valley Innovative Management Services, Inc. (Valley),[(1)] at the Pontotoc Hospital. Valley had a contract with Pontotoc Health Services, Inc. (PHS) in which Valley provided foods services to

the hospital. All foods and snacks served in the hospital were prepared by Valley employees like Russell.

¶3. Russell drove herself to the nearby Pontotoc Hospital emergency room seeking medical attention for her injury. There she was examined by Dr. Edwin R. Orr who worked at the hospital pursuant to a January 1, 1988 contract between PHS and Emergency Medicine Associates (EMA) (hereinafter referred to as Emergency Physicians Services (EPS)). During the examination no x-rays were taken on Russell's ankle to determine the extent of the injury. Russell claims that x-rays were not taken due to Dr. Orr's negligence. Dr. Orr claims the x-rays were not taken because Russell insisted she did not have time and had to return to her cooking duties. On December 28, 1989, Russell was examined again by Dr. Orr and was diagnosed with a fractured left fibula. Subsequently, Russell was treated by Dr. Massey for her injury. Russell received workers' compensation damages as a result of her injury.

¶4. On December 9, 1991, Russell filed a complaint against Dr. Orr and PHS charging Dr. Orr with medical negligence and PHS with vicarious liability. Dr. Orr filed an answer, and PHS filed a separate answer and motion for leave to include a cross-claim and third-party complaint against EPS. On January 17, 1995, Dr. Orr filed a motion for summary judgment requesting dismissal of the lawsuit with prejudice. Russell argued the motion for summary judgment should be dismissed because Dr. Orr asserted affirmative defenses which were not timely pled.

¶5. On July 18, 1995, the trial court granted Dr. Orr's motion for summary judgment finding there was no genuine issue of material fact in dispute. The court held that Russell and Dr. Orr were co-employees because PHS had the right to control each of them within the scope of their employment. The court then concluded that the Workers' Compensation Act barred Russell's common law action because co-employees cannot sue one another, and compensation received under the Act was her exclusive remedy. Miss. Code Ann. § 71-3-9 (1995). The court also dismissed *sua sponte* the complaint against PHS, on the ground that employers cannot be sued by employees. On August 17, 1995, Russell filed a notice of appeal to this Court.

## II.

¶6. In her brief Russell raises the following issues:

1. Is Plaintiff an employee of Pontotoc Hospital as well as Valley Innovative Management Services "Valley"?

2. Are both the Plaintiff and Defendant employees of Pontotoc Hospital?

3. Does Plaintiff's employment preclude her from pursuing a case in circuit court against Dr. Edwin R. Orr and Pontotoc Health Services, Inc?

4. The extent of control, if any, Pontotoc Hospital exerts over Plaintiff and/or Valley.

5. An interpretation of the covenants and agreements in the contract between Valley and Pontotoc Hospital.

6. Whether Plaintiff was employed by both Valley and Pontotoc Hospital.

7. Whether Pontotoc Hospital is immune from suit because of the Workers' Compensation Act.

8. Whether Dr. Orr is immune from suit because of the Workers' Compensation Act.

9. Whether Plaintiff can maintain her suit against Dr. Edwin R. Orr.

10. Did Orr's failure to plead injury by a fellow servant preclude his arguing that issue in his motion for summary judgment.

11. Did Dr. Orr's failure to plead the defense of immunity from suit because of the exclusivity of the Workers' Compensation Act waive the defense and preclude him from arguing same in his motion for summary judgment.

12. Are there any issues of material fact precluding summary judgment in this case.

13. Can the Circuit Court grant summary judgment to a party (Pontotoc Hospital) that did not file a motion for summary judgment?

¶7. For sake of clarity, the issues identified by the appellant have been consolidated into three issues for purposes of this opinion. Part II(a) will consolidate appellant's issues 1, 2, 3, 4, 5, 6, 9 & 12. Part II(b) will consolidate appellant's issues 7, 8 & 12. Appellant's issues 10, 11 & 13 are rendered moot by our holding and are not addressed herein.

¶8. This Court applies a *de novo* standard of review to a grant of summary judgment by the lower court. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. ***Northern Elec. Co. v. Phillips***, 660 So. 2d 1278, 1281 (Miss. 1995).

a.

**WHAT IS THE EMPLOYMENT STATUS OF DR. ORR AND RUSSELL, AND WHAT IMPACT DOES IT HAVE ON THE APPELLANT'S RIGHT TO RECOVER?**

**Is Dr. Orr an Employee of PHS?**

¶9. In granting summary judgment, the circuit court found that Dr. Orr was an employee of PHS. Russell challenges this contention on appeal and cites language from a contract between PHS and EPS which states that EPS subcontractors shall not be considered employees of PHS. Dr. Orr claims the circuit court's order should not be disturbed because statements in Russell's complaint and comments made by her counsel at oral argument indicate that Russell considered Dr. Orr an employee of PHS.

¶10. We agree with Dr. Orr's argument. When ruling on issues in a motion for summary judgment, the court is to consider whether the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c); ***Rolison v. City of Meridian,*** 691 So. 2d 440, 442 (Miss. 1997). In her complaint, Russell asserted that Dr. Orr was employed by PHS in her allegation of vicarious liability against PHS, stating that "[a]t all times herein mentioned Dr. Orr was acting in the scope of his employment as an

emergency room physician for Pontotoc Health Services, Inc." Russell did not oppose the summary judgment by establishing specific facts which went beyond her pleadings. *See **Nationwide Mutual Ins. Co. v. Garriga,*** 636 So. 2d 658, 661 (Miss. 1994). We therefore conclude that, as to Russell, the fact of Dr. Orr's employ by PHS has been judicially admitted and is not subject to appeal.

¶11. This issue is still in dispute, however, in the third party action by PHS against EPS, since in its answer PHS denied that it employed Dr. Orr. The record shows that Dr. Orr was an emergency room physician (ERP) working for EPS at Pontotoc Hospital on the date the appellant was injured. The contract between PHS and EPS generally provides that EPS will supply ERPs to the hospital during hours designated in the contract. With regard to the employment status of the ERPs provided by EPS, the following is written:

> (16) Hospital agrees and realizes that EMA is not involved in the practice of medicine and that EMA is a business corporation licensed to do business in the State of Mississippi for the purpose of providing ERP coverage to HOSPITAL or other hospitals or similar facilities. HOSPITAL also agrees and realizes that the relationship which exists between EMA and ERP is that of contractor and sub-contractor, respectively, and not that of employer and employee, and EMA shall be responsible for direct payment of ERPs. EMA shall hold the HOSPITAL harmless and indemnify it from any claims made in connection with compensation and payment of the ERPs. EMA, its employees, and all subcontractor ERPs, shall not publicly hold themselves out as employees of HOSPITAL and shall inform any patients that they are subcontractor ERPs or employees of EMA and not HOSPITAL if requested to do so. ERPs shall in no way be considered the employees and/or agents of the HOSPITAL and shall not perform any acts or actions to indicate otherwise; further, EMA shall hold the HOSPITAL harmless and indemnify it from any claim made as a result of any act and/or omission of its ERPs. EMA shall have only the responsibility of scheduling said ERPs and as also may be delineated herein.

¶12. Whether Dr. Orr is an employee of the hospital is a matter defined by the legal and/or contractual relationship between Dr. Orr and PHS. Dr. Orr indicated in his affidavit that he was a dual employee of the PHS and EPS. He relies on ***Hardy v. Brantley***, 471 So. 2d 358, 371 (Miss. 1985). In ***Hardy***, the Court dealt with a medical malpractice action in which a patient's severe abdominal pain was misdiagnosed by a physician who worked in the emergency room pursuant to a contract with a hospital. Subsequently, the patient died and the hospital and physician were sued for negligence. On appeal from directed verdicts, this Court held that where a hospital holds itself out as providing a given service, and where the hospital enters into a contractual arrangement with one or more physicians, and a patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies rendering the hospital vicariously liable for the negligent acts of the physician.

¶13. The circuit court agreed that ***Hardy*** supports the contention that Dr. Orr was an employee of the PHS. The court stated that since the doctrine of respondeat superior applied, an employer/employee relationship necessarily existed. This conclusion may have been premature, for at the very least it left open other genuine factual issues. While under ***Hardy*** the hospital may be vicariously liable for the conduct of Dr. Orr, his status as an employee of PHS is uncertain and a

matter to which reasonable jurors could disagree. *See id.* at 370-71.

¶14. Dr. Orr claims PHS had the right to terminate employment, control work schedule, and set pay at an hourly wage. Any classification of the EPS physicians as PHS employees, however, is contrary to the terms of the contractual agreement between EPS and the PHS. Especially troubling is Dr. Orr's argument that PHS's control over him as an employee springs from the contract which categorically forbids that EPS physicians be considered employees of PHS. In his brief, Dr. Orr argues that several provisions in the contract between PHS and EPS grant PHS control over Dr. Orr. However, he fails to explain or acknowledge the gravity of provision 16 set out above, which declares that ERPs from EPS shall not be considered employees of PHS. This contradiction alone severely undermines the appellee's contentions that Dr. Orr was an employee of PHS.

¶15. This Court has recognized the rule which acknowledges that a person may be an independent contractor as to certain work and a mere agent or employee as to other work for the same employer. *Kight v. Sheppard Building Supply, Inc.*, 537 So. 2d 1355, 1359 (Miss. 1989); *see also Carroll v. E.G. Laughlin & Sons*, 220 Miss. 535, 540, 71 So. 2d 461 (1954). In *Kight*, the Court found that an owner exercised significant control over a prime contractor such that the prime contractor ceased to function as an independent contractor and became nothing more than a "limited agent." *Kight*, 537 So. 2d at 1359. Arguably, Dr. Orr's actions at the hospital were so defined and controlled by the hospital administration that a master-servant relationship was established; but simultaneously, Dr. Orr's actions at the hospital were squarely within the four-corners of the contract between EPS and PHS.

¶16. In any event, Dr. Orr's relationship with PHS is a product of the contract between PHS and EPS. While Dr. Orr argues that he is a dual employee of EPS and PHS, the only support for this contention is based in the very document which declares that Dr. Orr shall not be considered an employee of PHS.

¶17. Summary judgment must be carefully imposed and when erroneously applied this Court should reverse. "Before summary judgment is granted, it must be determined whether reasonable jurors could not differ on the factual questions in issue." *Carpenter v. Nobile*, 620 So. 2d 961, 965 (Miss. 1993); *Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214, 217 (Miss. 1988). Reasonable jurors could differ as to whether Dr. Orr was an employee of PHS, or both PHS and EPS. One need only compare the terms of the EPS contract with the control exercised by PHS to get conflicting interpretations as to Dr. Orr's employment status. Thus, summary judgment on the issue of Dr. Orr's employment by PHS was inappropriate as to the third party suit.

## Is Russell an Employee of PHS?

¶18. Russell challenges the circuit court's ruling that she was a dual employee of Valley and PHS. At her deposition, Russell stated that she had been an employee of Valley Foods for almost eight years. Dr. Orr argues that a host of undisputed facts establishes that Russell was also an employee of PHS. Primarily, Dr. Orr claims PHS had the power to fire, reassign, and control the activities of Valley employees. Also, Dr. Orr presented evidence which showed that Russell's workers' compensation documentation listed PHS, not Valley, as her employer.

¶19. Russell argues that the contract which governs the relationship between Valley and PHS

expressly states that Valley employees are not employees of PHS. In the April, 1989, contract which identifies Valley as OPERATOR and PHS as CLIENT, paragraph 21 states the following:

> It is understood that this agreement does not constitute the OPERATOR as an agent or legal representative of the CLIENT for any purpose whatsoever, and the OPERATOR is not granted any right or authority to assume or to create any obligations or responsibility, express or implied, in behalf of or in the name of the CLIENT, or to bind the CLIENT in any manner or for anything whatsoever. The employees of the operation shall be and remain the employees of the OPERATOR and shall have no claim upon the CLIENT for wages or benefits. The OPERATOR, in all dealings with the third parties, shall act in its own name and in its own behalf.

¶20. Dr. Orr argues the contractual language of paragraph 21 has limited utility due to this Court's holding in *Northern Electric*, 660 So. 2d 1278, which recognized that an employer/employee should not be determined by exclusive reliance on what may be written on paper. In that case, an employee of Kelly Services, a temporary employment agency, was injured while working under a service agreement with Northern Electric Company. The employee, Phillips, sought to bring a common law action but was denied and relief was confined to the workers' compensation system.

¶21. Dr. Orr claims that Russell's common law claim should be denied for reasons similar to those expressed in *Northern Electric*; he maintains that everyday operations and real world right to control are the most important factors used to determine employer/employee relationship. *See id.* at 1282. However, Dr. Orr's interpretation of this Court's holding in *Northern Electric* is far-reaching. That case can be distinguished from the instant case because Kelly Services clearly intended its employees to be controlled and directed by the Northern Electric Company. The back side of the service agreement stated that Kelly Services employees were under the direction and control of the Northern Electric Company. In the present case, the contractual language of paragraph 21 makes clear that the intentions of Valley were completely different than those expressed by Kelly Services.

¶22. Dr. Orr offers the testimony of Ensley Howell, Director of Food Services at Valley, as proof that PHS was an employer of Russell regardless of what was written in the contract. Howell stated that Russell had been employed by Valley and worked at the hospital for approximately four years and two months at the time of the accident. While Howell indicated that PHS administrators maintained power to reassign or terminate Valley employees for unsatisfactory performance, she also stated that *Russell was a Valley employee with duties at PHS*.

¶23. The lower court found that Russell was a joint or dual employee of PHS and Valley based on evidence presented by Dr. Orr that PHS had the right to control Russell. The court found the affidavit of Ensley Howell particularly persuasive. As for Russell's contention that the Valley/PHS contract discredits any conclusion that Russell is an employee of PHS, the trial court thought otherwise. "This contract does not refute Dr. Orr's evidence that Pontotoc Hospital had power to fire and reassign Ms. Russell and the other evidence relating to Pontotoc Hospital's right to control Ms. Russell." Thus, the trial court found that Russell was a dual employee mainly because Ensley Howell indicated in her affidavit that PHS had the right to reassign or terminate Valley employees. However, a careful reading of Howell's affidavit suggests that PHS may not have had unconditional right to reassign or terminate Valley employees.

The Administrators of the Hospital were in overall control of the Hospital, and particularly the Food Service Department. The Administrator could require reassignment or termination of employees of Valley where the conduct or performance was unsatisfactory or subject to complaint.

Russell argues that Howell's affidavit does not support the conclusion that PHS could fire Valley employees, and that "[q]uite the contrary, the statements show that Valley did its own hiring, firing, and reassigning."

¶24. In the end, the impact of Ensley Howell's comments are best left for a jury to determine. Also, reasonable jurors may disagree as to whether Russell, a cook who worked in one facility, was a dual employee of PHS and Valley. Simply stated, the rule is that dual employment exists ". . . when an employee is engaged in the service of two (2) employers in relation to the same act . . ." *Ray v. Babcock & Wilcox Co., Inc.*, 388 So. 2d 166, 167 (Miss. 1980). In that case, Ray was an electrician who did electrical work for the general contractor and, on occasion, did electrical work for the subcontractor. Relying on the principle that an employee may be employed by more than one employer while doing the same work, the Court found that Ray was a dual employee of the general contractor and subcontractor. *Id.* at 168; *Boyd v. Crosby Lumber & Mfg. Co.*, 250 Miss. 433, 166 So. 2d 106 (1964).

¶25. Whether Russell's duties at the hospital were so directed by PHS as to classify her as an employee, dual or otherwise, is a triable issue because the clear intention of the Valley/PHS contract was to preclude Valley employees from being considered employees of PHS. Whether the contract refutes Dr. Orr's evidence that PHS had control over Russell raises a genuine issue of material fact. Summary judgment is not permitted in such cases.

> A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.

Miss. R. Civ. P. 56 cmt.

b.

## DOES THE WORKERS' COMPENSATION ACT IMMUNIZE DR. ORR AND PHS FROM COMMON LAW TORT LIABILITY?

¶26. Based on the finding that Dr. Orr and Russell were both employed by PHS, the trial court found that Russell's common law action was without merit in light of this Court's interpretation of the Mississippi Workers' Compensation Act.

> Our Act and the common law right to sue a fellow employee for negligence, as opposed to an intentional tort, cannot coexist, so the common law right to sue a fellow employee where the injured employee is covered by the Act must give way.

*McCluskey v. Thompson*, 363 So. 2d 256, 264 (Miss. 1978); Miss. Code Ann. § 71-3-9 (1995).

¶27. In *McCluskey*, the Court explained that the Workers' Compensation Act was a no-fault compensation system designed to compensate victims of industrial accidents and aid these individuals in their rehabilitation. The Act places a financial burden on the employer because the accident is within the scope of the victim's employment, and the employer is able to pass the cost on to society. *Id*. at 259. In return, the Act immunizes employers and co-employees for liability under common law negligence.

> [T]he statute contemplates that an employee injured in the scope of his employment by the negligence of a co-employee may not recover from the co-employee, at common law or otherwise, because workers' compensation is the employee's exclusive remedy for work-related injuries against either his employer or co-employees.

*Medders v. U.S. Fidelity and Guar. Co.*, 623 So. 2d 979, 984 (Miss. 1993); *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988); *Brown v. Estess*, 374 So. 2d 241, 243 (Miss. 1979).

¶28. As indicated above, there are reasons to conclude that neither Dr. Orr nor Russell were employed with PHS. But even assuming Dr. Orr and Russell are employees of PHS, their co-employee status does not necessarily bar Russell's common law action, nor does the exclusivity feature of the Workers' Compensation Act preclude Russell's legal action.

¶29. The Workers' Compensation Act provides compensation under Miss. Code Ann. § 71-3-7 (1995) for those injured in the course of employment.[2] A review of the facts in dispute may be helpful. In response to interrogatories regarding the events which led to Russell's injury, the following was stated by Russell:

> Dr. Edwin R. Orr was negligent because he did not order or perform an x-ray on Ms. Russell's left leg and foot when she presented to the emergency room on December 25, 1989. Dr. Orr was also negligent for not referring Ms. Russell to another doctor for ten days after the incident and seven days after he had x-rayed her left leg and foot and knew that it was broken. All of these facts breach the standard of care which Dr. Orr was obligated to perform.

¶30. The following is Dr. Orr's version of the events that occurred during Russell's visit to the emergency room on December 25, 1989:

> The initial diagnosis was a sprain, based upon the initial information and examination. The initial complaint that was the chief complaint was that she had slipped down on water in the kitchen. The patient, Mrs. Russell, was instructed to use an Ace bandage and to apply ice. Dr. Orr advised Mrs. Russell that the only way to determine whether the foot was broken was to x-ray it. Mrs. Russell was in a hurry and stated that she did not have time on Christmas day to get an x-ray due to the fact that she needed to get back to the kitchen to cook Christmas dinner and declined an x-ray. An Ace bandage was applied at the hospital. She was advised to follow-up with doctor as needed. The Defendant, Dr. Orr, would adopt by reference, the entire emergency room records.

¶31. The actual injury for which Russell seeks to recover stems from the treatment she received in the

PHS emergency room from Dr. Orr. Even in her complaint, Russell suggests that the harm she suffered originated from the doctor-patient relationship that she shared with Dr. Orr. Though this Court has held that aggravation of an existing infirmity is compensable under the Workmens' Compensation Act, *see Universal Mfg. Co. v. Barlow,* 260 So. 2d 827 (Miss. 1972), this does not disturb the principle that third parties causing those injuries may be held liable in tort for causing the aggravation of those pre-existing injuries. Miss. Code Ann. § 71-3-15(4) (1995). The injury which is the subject of the instant complaint emanates from an alleged failure to diagnose and prescribe proper treatment. Assuming that Dr. Orr and Russell are both employees of PHS--and this is far from certain--the question then becomes whether the allegedly negligent treatment Russell received was administered in the course of her employment.

¶32. Dr. Orr contends that the rule from *Trotter v. Litton Systems, Inc.*, 370 So. 2d 244 (Miss. 1979), provides controlling legal precedent. In *Trotter*, this Court considered the so-called dual capacity doctrine, by which an employer normally shielded from liability under the Workmens' Compensation Act may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer. *Trotter,* 370 So. 2d at 245. The *Trotter* Court rejected the dual capacity doctrine on the ground that if the employer is liable for compensation he cannot also be liable in tort. Thus, since aggravation by a physician of an injury sustained by an employee in the scope of employment is compensable under the Act, the employer is shielded from liability in tort. *Id.* at 247. On this ground, Dr. Orr claims that Russell's injury in the kitchen was only aggravated by his alleged negligence and any recovery for injury must be within the exclusive workers' compensation law.

¶33. The *Trotter* Court depended in part on *Dixon v. Ford Motor Co.,* 125 Cal. Rptr. 872 (Cal. App.1976), and *Warwick v. Hudson Pulp & Paper Co., Inc.,* 303 So. 2d 701 (Fla. Dist. Ct. App. 1974). In *Dixon*, survivors of an employee who died on the job brought a wrongful death action against the employer and a nurse and orderly in the company's employ who had provided allegedly negligent treatment at the plant aid station. The court affirmed the trial court's grant of summary judgment on the ground that the exclusive remedy was under the workmens' compensation act. *Warwick* also involved negligent treatment at an employer's clinic staffed by nurses employed by the company. The injured employee argued that aggravation of his compensable back injury by the company's nurses fell within the scope of the dual capacity doctrine, rendering the employer liable in tort. The court rejected this argument and held that the employer was entitled to the immunity of common-law liability prescribed under Florida's Workmens' Compensation Act. *Warwick,* 303 So. 2d at 702.

¶34. *Dixon* has itself been distinguished in later California cases. In *Perry v. Heavenly Valley,* 209 Cal. Rptr. 771 (Cal. App. 1985), a ski resort employee brought a negligence action against the resort alleging negligence arising from an accident in which the bindings separated from her skis while she was engaged in her duties as a racing coach at the resort. The court identified the critical issue as whether the resort mounted her bindings in its capacity as a provider of services to the general public and not as an incident to the employer-employee relationship. *Perry,* 209 Cal. Rptr. at 779. The court noted that "*Dixon* is clearly distinguishable from the present case because [there] the plant aid station was maintained exclusively for employees of the plant and for the mutual welfare and convenience of the employer and employees. Thus, it was analogous to a manufacturer providing a product which is

not sold to the general public." 209 Cal. Rptr. at 780. In another case, **Bell v. Macy's California,** 261 Cal. Rptr. 447 (Cal App. 1989), a pregnant employee of Macy's received negligent treatment from a nurse employed by the store to staff a small dispensary and to provide first aid to employees and customers. Similarly, the case turned on whether the employee received the services in her capacity as employee or customer. *Id.* at 452. The court ruled that "[i]n the absence of any indication that Macy's and Bell stepped out of their roles as employer and employee, we decline to apply the dual capacity rule to this case." *Id.* at 453.

¶35. As to **Warwick,** the Florida courts have not distinguished this case nor adopted the dual capacity doctrine in any other contexts. However, its courts have not yet been squarely faced with circumstances like those in the present case, where the plaintiff's receipt of ill-manufactured goods or negligent services was arguably outside the scope of employment. It has been suggested, however, that were they faced with such an issue the question would hinge on whether the plaintiff were acting in his or her capacity as a member of the general public. In **Roberson v. Nooter Corp.,** 459 So. 2d 1156 (Fla. Dist. Ct. App. 1984), the plaintiff was injured by an explosion of a continuous polymerization finisher which was manufactured by a subsidiary of defendant-employer Monsanto. The **Roberson** Court noted that the issue was "based upon the manufacturer's assuming a liability toward its employee as it would assume toward the general public who buys the product and for whom the product is primarily manufactured." *Id.* at 1157. However, the court declined to determine the viability of the doctrine in Florida because the finisher was not manufactured primarily for sale to the general public. *See also* **Caraccioli v. KFC Mfg. Corp.,** 761 F. Supp. 119 (M.D. Fla. 1991).

¶36. We read **Trotter** to hold merely that when an employee seeks medical services at an on-site company facility, or the services are otherwise rendered to the employee in his or her capacity as such employee, then the dual capacity doctrine may not be invoked to hold employers or co-employees liable for common law actions under some alternative duty. However, when it can fairly be said, as here, that the injured employee has sought such services as a member of the general public, then a question of fact arises whether the services were rendered within the scope of employment. This approach does not constitute an acceptance of the dual capacity doctrine rejected in **Trotter.** The determination of common law liability is based not on an additional duty imposed upon the employer or co-employee, but rather on whether the injury complained of was incurred during the course of employment as required under the Workmens' Compensation Act.[3]

¶37. We believe the New York courts have best explained this approach. In **Milashouskas v. Mercy Hosp.,** 408 N.Y.S. 2d 808 (N.Y. App. Div. 1978), a nurse was seriously injured in the course of her employment at the hospital where she worked. Requiring immediate medical attention, she went to the emergency room of the hospital and was subsequently hospitalized as an in-patient. She later filed a malpractice action against the hospital alleging she was the victim of negligent treatment. As an affirmative defense the hospital argued that the nurse's medical malpractice action was barred because the Workers' Compensation Law provided an exclusive remedy. The court dismissed the affirmative defense, holding that the plaintiff nurse received medical treatment as a member of the public, and there was no evidence that the medical treatment arose out of and in the course of the plaintiff's employment. **Milashouskas,** 408 N.Y.S. 2d at 809.

¶38. In **Weber v. State,** 429 N.Y.S. 2d 380 (N.Y. Ct. Cl. 1980), an action was brought against the state and the New York Department of Mental Hygiene for wrongful death predicated upon medical

malpractice and breach of contract. In determining whether to strike the defendant's affirmative defense that workers' compensation benefits would constitute the claimant's exclusive remedy, the court noted that cases dealing with medical malpractice of an employer fall into two basic categories: (1) where the employer is engaged in a non-medical business and supplies medical services solely to its employees, and (2) where the employer is a hospital providing medical services to the public. In the first category compensation has been held exclusive, while the opposite result has been obtained in the second. *Weber,* 429 N.Y.S. 2d at 383. The court held that unlike *Milashouskas,* "the facility involved is not engaged in providing general medical services to the public, but is rather a psychiatric hospital engaged in the care, treatment and rehabilitation of the mentally disabled." *Id.* The court found that a duty existed to provide treatment predicated upon the decedent's status as an employee of the defendant and the beneficiary of a union contract. This indicated a prima facie connection between the injury and the employment, and thus the claimant had not established unavailability of compensation as a matter of law.

¶39. In *Firestein v. Kingsbrook Jewish Med. Ctr.,* 528 N.Y.S. 2d 85 (N.Y. Ct. App. Div. 1988), an injured hospital employee filed suit against a hospital and co-employee for medical malpractice. The plaintiff was employed as a patients account clerk, and during the course of her employment slipped and fell. She was admitted to the hospital for medical treatment, and during her stay was reinjured by the negligent mistreatment of a non-physician employee, Scott. The defendants argued on appeal that because the hospital was Firestein's employer and because Scott was her co-employee, they were shielded from liability at common law. *Id.* at 88. The court held that the injuries resulting from the mistreatment did not arise out of the patient's employment, citing *Milashouskas* and a host of other New York cases. *Id.* The court observed, "[t]hese cases are to be distinguished from those in which malpractice is committed by a coemployee of the plaintiff, and where the medical services rendered by that coemployee were not available to the public, but were exclusively available to coemployees, so that a nexus exists between the plaintiff's employment and the occurrence of the malpractice." *Id.*

¶40. Most importantly, the court articulated why the dual capacity doctrine--which has been rejected in New York as it has been in Mississippi under *Trotter*--was not invoked by the ruling of the court:

> Under the dual capacity doctrine, an employee who is injured during the course of his employment may sue his employer for money damages if the employer "occupies. . .a second capacity that confers on him obligations independent of those imposed on him as employer" (citations omitted). Once again, the fundamental distinction in the present case is that the injuries for which Mrs. Firestein seeks compensation in a court of law did not occur within the scope of her employment. To allow the plaintiff to pursue her common-law right to recover compensation for the injuries sustained by her as a result of medical malpractice which did not, in any sense, occur during the course of her employment, does not constitute approval of the dual capacity doctrine.

*Firestein,* 528 N.Y.S. 2d at 89.

¶41. This Court finds such an approach sensible and fair. We do not interpret the Act to protect physicians when their services are offered to the general public and fellow employees seek such services as members of that public. Barring an employee's common law action against a physician by confining his recovery exclusively to the workers' compensation system for negligent aggravation of

an on-the-job injury in such circumstances goes beyond the purposes of the fellow employee immunity principle of *McCluskey* and Miss. Code Ann. § 71-3-9.

¶42. We thus hold that where an employee is injured in the course of employment, and subsequently seeks treatment from a co-employee which aggravates the injury, a question of fact arises as to whether a sufficient nexus exists between the plaintiff's status as employee and the treatment sought for the injury. Where treatment is sought at a company-owned facility or first aid station maintained by the employer for the welfare and benefit of employees, the connection between employment status and the subsequent treatment is clear. However, where the plaintiff employee can demonstrate that separate treatment was sought in the plaintiff's capacity as a member of the general public, then any common law cause of action which arises as a result of that treatment will not be excluded by the exclusivity provisions of Miss. Code Ann. § 71-3-9.

¶43. Under this analysis, Dr. Orr wrongly relies on the "similarities" between *Northern Electric*, 660 So. 2d 1278, and the instant matter. He states that "Northern Electric obviously is akin to Pontotoc Hospital, Kelly to Valley, Phillips to Ms. Russell, and the Northern Electric co-employee Minter to Orr." Arguably, the dissimilarities are compelling. In *Northern Electric*, the co-employee Minter was a forklift driver working at the same site as plaintiff/employee Phillips. In the present case, the alleged co-employee, Dr. Orr, was a physician rendering medical services to the general public in an emergency room at a hospital where plaintiff/employee Russell only coincidentally worked as a cook.[(4)]

¶44. Russell states she entered the emergency room seeking medical attention. The emergency room record indicates Russell was brought into the hospital by wheelchair and discharged by Dr. Orr fifteen minutes later. A doctor-patient relationship existed between Russell and Dr. Orr. In addition, there are no provisions in the contract between Valley and PHS which require that Valley employees receiving medical services at PHS be considered as anything other than members of the public. The appellant argues, "Mrs. Russell was a patient seeking medical treatment, just as any other member of the public that would come to the emergency room for treatment." We conclude that whether Russell sought treatment as a member of the general public is properly a question for the jury, and thus summary judgment was inappropriate as to whether Dr. Orr can be held liable for negligence.

¶45. As to the common law liability of PHS, we decline to rule. Since Russell sued PHS on a theory of vicarious liability, the issue of PHS's liability is dependent on the factual issue of whether Dr. Orr was an employee of PHS at the time he rendered the allegedly negligent treatment to Russell.

IV.

¶46. For the foregoing reasons, the grant of summary judgment by the circuit court is hereby reversed and the case remanded for further proceedings.

**¶47. REVERSED AND REMANDED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., AND McRAE, J., CONCUR IN RESULT ONLY. ROBERTS, J., NOT PARTICIPATING.**

1. Formerly Mississippi Valley Food Services Corporation.

2. The relevant section of § 71-3-7, Liability for Payment of Compensation, provides in pertinent part:

> Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. An occupational disease shall be deemed to arise out of and in the course of employment when there is evidence that there is a direct causal connection between the work performed and the occupational disease.

3. It should be noted that whether aggravation of an existing injury is compensable under the Act is not the determining factor in whether the aggravation occurs within the course of employment. It is well settled that a person who is injured in the course of employment and who later suffers an aggravation of this injury due to negligent treatment by a third party has a remedy against the employer under the Workmens' Compensation Act. *Barlow,* 260 So. 2d 827; *Taylor v. U.S. Fidelity and Guar. Co.,* 420 So. 2d 564, 565 (Miss. 1982). Of course, in such cases the employer may institute a third party action against the party ultimately liable. Miss. Code Ann. § 71-3-15(4) (1995).

4. At least two states have held that it is the doctor-patient relationship itself which transcends co-employee immunity. In *Wright v. District Court*, 661 P.2d 1167 (Colo. 1983), the Colorado Supreme Court held that a physician employed by a company to render medical services to the company's employees was not immune to liability under the Workers' Compensation Act because the physician and employee were co-employees. Addressing why the doctor-patient relationship transcends the immunity protection provided co-employees, the Colorado Supreme Court emphasized that the relationship is distinct from the employment relationship and entails different rights and duties. Where a private doctor would be liable for malpractice "[t]here is no logical reason to treat company physicians differently." *Id.* at 1168.

The Indiana Court of Appeals has also recognized the special importance of the relationship between doctor and patient, and has held that immunity protection under that state's workers' compensation act does not apply simply because these individuals share a common employer. *Ross v. Schubert,* 388 N.E. 2d 623 (Ind. Ct. App. 1979). The court stated that because of the peculiar nature of the profession, "'a licensed physician may not accept directions and instructions in diagnosing and treating ailments from a corporation or an individual who is not a licensed practitioner.'" *Id.* at 629 (quoting *Iterman et al. v. Baker*, 15 N.E. 2d 365, 370 (Ind. 1938). The Indiana courts have declined to extend the *Ross* immunity exception beyond the special relationship between doctor and patient. *See e.g., Rodgers v. Hembd,* 518 N.E. 2d 1120 (Ind. App. 1988) (refusing to extend *Ross* exception to non-medical professionals employed by claimant's employer); *Tarr v. Jablonski,* 569 N.E. 2d 378 (Ind. App. 1991) (*Ross* exception not applicable to paramedic services). However, it has been recently reiterated that the "essence" of the *Ross* exception is "the independent professional judgment which a physician must necessarily exercise." *Tarr,* 569 N.E.2d at 380.