ROBERTS, J.,
dissenting:
¶ 11. With utmost respect for the majority, I dissent. The majority’s resolution of this appeal turns on the “discretionary function” immunity provision of the Mississippi Tort Claims Act. Mississippi Code Annotated section 11^46-9(l)(d) (Rev.2002) states:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
To determine whether an act or a failure to act is a discretionary function, we use the following two-part test: “(1) whether the activity involved an element of choice or judgment, and if so; (2) whether the choice or judgement [sic] in supervision involves social, economic or political policy alternatives.” Barr v. Hancock County, 950 So.2d 254, 257 (¶10) (Miss.Ct.App.2007). “Conversely, conduct will be considered ministerial, and, therefore, immunity will not apply, if the obligation is imposed by law leaving no room for judgment.” Id.
¶ 12. The majority cites Lee v. Mississippi Department of Transportation, 37 So.3d 73, 81 (1122) (Miss.Ct.App.2009) for the principle that “maintenance of state highways is a discretionary function.” The majority accurately quotes a portion of the conclusion of this Court’s opinion in Lee. However, Lee pertained to maintenance of state highways in the form of resurfacing the actual surface of the highway. That is, in Lee it was “undisputed that the area of highway on which the accident occurred had areas of indentation, or was ‘rutted out,’ ” which contributed to “water pooling on the highway.” Id. at 77 (¶ 8). In that case, Richard Lee, the District Engineer for [the Mississippi Department of Transportation (MDOT) ], stated in a sworn affidavit that “the District is allotted a finite amount of funds annually for road maintenance. At the discretion of the Agency, those finite available funds are used where the Agency believes they are needed most, particularly on the roads of the State in the most need of repair.” Id. at 78 (¶ 9). This ease does not involve the maintenance of a highway in the form of a major resur *1214 facing project. Mindy Phillips McFarland’s claim is related to MDOT’s alleged failure to perform routine maintenance by simply “grading” the shoulder of Highway 27 in Copiah County. The majority accurately relates the facts that led to McFarland’s injuries and her claim. According to McFarland, the drop-off from the surface of Highway 27 to the shoulder was so significant it prevented her from safely reentering the right-of-way.
¶ 13. The parties took numerous pretrial depositions. Those depositions were exhibits were introduced as exhibits during the summary judgment proceedings. Lucy Hurst, MDOT’s assistant district engineer of maintenance for District 3, testified by deposition. According to Hurst, MDOT had made a policy decision to upgrade the shoulders of Mississippi highways. Specifically, Hurst explained:
What has happened over the State of Mississippi, since about 2000, we have noticed that if we have room out there to add two more feet of extra pavement— and this was a decision made out of the Jackson tenth floor — that we — it would be prudent for us to put out two more feet of paved shoulder in order to keep drop-offs from happening, if you have to room to start with. So at that time, once any job c[a]me up for an overlay, if it had the required width, we were allowed to put two extra feet out there for a shoulder.
When asked why MDOT made that decision, Hurst responded, “[bjecause of us always having to repair shoulders and spending lots and lots of money on grading the shoulders. It was noted that we could save a lot of money to go ahead and pave them if we had room.” Hurst went on to testify that the funds for the upgrade of Highway 27 were to be paid for by the American Assistance and Recovery Act.
¶ 14. However, Hurst also testified that a shoulder drop-off of greater than three inches should be repaired within a month of recognition of the problem. Hurst went on to testify, “[i]f the shoulder drop-off is bad enough ... [the maintenance crew] will then go out immediately and take mixture and put [it] out there.” According to Hurst, the maintenance crew has “to blade the shoulders once a year every year. It’s mandatory.” According to Hurst, standard operating procedures dictate what equipment and materials are necessary to repair shoulder drop-offs. McFarland’s expert, George M. Hammitt, PhD, PE, opined that the shoulder where McFarland was unable to re-enter the roadway dropped off three inches or more for approximately four hundred feet. Robert Broadwater, the “Highway Maintenance Superintendent 2” for Copiah County, among others, testified that he personally inspects Highway 27 once each month. The record contains Broadwater’s monthly maintenance inspection reports. Broadwa-ter’s maintenance inspection report from February 2008 notes that there was a shoulder drop-off of unspecified depth that needed to be rectified as one travels south on Highway 27 approximately 3.1 miles from the Copiah county line. The record does not contain Broadwater’s March 2008 maintenance inspection report, but for the next four months, Broadwater reported unsatisfactory shoulder drop-offs at the same exact location on Highway 27. Broadwater’s August 2008 report did not indicate that there was a shoulder drop-off at the same location. Coincidentally, that was the same month as McFarland’s crash. However, Broadwater’s September, October, and November 2008 reports note that shoulder drop-offs required remedying approximately two-tenths of a mile from the earlier 2008 shoulder drop-off on Highway 27. In the context of a motion for summary judgment, we are required to view *1215 the evidence in the light most favorable to the non-moving party. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997). Accordingly, I find we should conclude that MDOT was not rectifying shoulder drop-offs within the prioritized one-month time frame expressed by Hurst.
¶ 15. The record also contains a summary compilation of MDOT’s Copiah County maintenance crew’s activity log for August 21, 2007, through June 9, 2008 — a period of almost one year before McFarland’s accident. Despite Broadwater’s repeated monthly notations of the need for repair of shoulder drop-offs at the same reference point of Highway 27, the activity log indicates that the MDOT county maintenance crew spent one day in April 2008 conducting “Other Shoulder & Approach Maintenance” on Highway 27. Hurst explained that “Other Shoulder & Approach Maintenance” was in reference to “[m]is-eellaneous activities pertaining to the shoulder and approach maintenance not identified as a specific function. This includes crack repair and concrete surface replacement.” Hurst further explained that “Other Shoulder and Approach Maintenance” did not include what she described as “mandatory” annual grading of the shoulders to eliminate unsafe drop-offs. Thirteen days after the maintenance crew performed “Other Shoulder & Approach Maintenance,” Broadwater still noted that shoulder drop-off maintenance was necessary beginning at the same exact location. It is undisputed that the MDOT maintenance crew for Copiah County had the materials, equipment, and manpower to have timely repaired the drop-off prior to McFarland’s accident. In the context of the review we must conduct, I find that it is necessary to conclude that the maintenance crew was not remedying the shoulder drop-offs that Broadwater consistently noted. Other than that single entry, the maintenance crew’s activity log makes no mention of repairing any substandard or dangerous shoulder drop-offs. Instead, the maintenance log indicates that the maintenance crew repaired one or more signs, mowed the grass, and sprayed weeds along Highway 27.
¶ 16. While it is true that MDOT has limited funds and limited manpower, all governmental agencies face the same limitations. Even so, the Mississippi Legislature did not give MDOT unqualified blanket immunity when it comes to all aspects of maintenance of state highways. The circuit court granted summary judgment exclusively on the discretionary function immunity exemption to the waiver of sovereign immunity found in section 11-46-9(l)(d). Discretionary immunity does not allow discretion without reason. Given the precise circumstances of this case, reviewed within the bounds of the appropriate standard of review, I detect no economic policy behind the decision to neglect Hurst’s stated standard of repairing significant shoulder-drop offs within one month. I interpret the majority opinion as conveying the discretion for MDOT to do what it wants when it wants without requiring any explanation beyond claiming limited resources in the form of manpower and time.
¶ 17. It is very well possible that, if this matter were remanded for a bench trial on the merits, the circuit court would consider the exact same conflicting evidence and conclude that the weight of the evidence falls in MDOT’s favor. Even so, we must consider a motion for summary judgment with a skeptical eye. Ratliff v. Ratliff 500 So.2d 981, 981 (Miss.1986). It is better to err on the side of denying the motion. Id. Given the fact that the manpower, equipment, and materials were available to the maintenance crew at all times — combined with Hurst’s testimony that, once discovered, a drop-off of three inches or more should be repaired within a month; Broad- *1216 water’s near constant monthly notations regarding drop-offs in the same locations; and the maintenance crew’s activity log showing only one instance of remedying such drop-offs, I do not find that the circumstances of this case demonstrate that the choice or judgment in supervision involved any social, economic, or political policy alternative. The MTCA does not provide unqualified and absolute immunity in this particular case. I would reverse the judgment of the circuit court and remand this matter for a trial before the circuit court, sitting without a jury. Accordingly, I respectfully dissent.
LEE, C.J., AND RUSSELL, J„ JOIN THIS OPINION.