BARNES, J.,
for the Court:
¶ 1. Sherry Wiltshire appeals the judgment of the Circuit Court of Hinds County, which granted summary judgment in favor of the Mississippi Fairgrounds Commission (MFC), thereby dismissing with prejudice Wiltshire’s claims against the MFC under the Mississippi Tort Claims Act (MTCA). Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On February 5, 2002, Wiltshire arrived at the Dixie National Livestock Show at the Mississippi State Fairgrounds in *565 Jackson, Mississippi, at approximately 4:00 p.m. to visit her son, Josh, who was a member of the Smith County 4-H club and was participating in the Mississippi Junior Round-Up. Approximately thirty minutes after Wiltshire’s arrival at the fairgrounds, in the main aisle of one of the livestock barns, a large domestic cow named Nola trampled Wiltshire to the ground. The incident resulted in severe injuries to Wilt-shire’s leg. It is undisputed that the cow got loose from a teenage boy, Micah Dingier, who was leading the cow to get some water in the same general vicinity where Wiltshire was walking. Dingier testified he was dragged several yards by Nola before he had to let go of her halter; Nola then hit Wiltshire from behind. Dingier did not witness the actual accident. Apparently, Nola became “spooked” and charged Wiltshire, but neither Dingier nor Wiltshire could say for certain why. Wilt-shire argues Nola became spooked because the aisle of the barn was allowed to be cluttered with show boxes, fans, lawn chairs, and other items, and that Dingier was “inexperienced” in leading the cow. Dingier also admitted dogs were running unleashed in the barn, but he did not see any dogs chasing Nola or any other cows at the time.
¶ 8. In May 2003, Wiltshire initially filed suit against the State of Mississippi, the Board of Trustees of State Institutions of Higher Learning (IHL), MFC, and Defendants A-Z, seeking compensation for her injuries under premises liability. Ultimately, several other defendants were added to the suit.[1] Upon completion of discovery, MFC and the State of Mississippi filed a motion to dismiss or, in the alternative, a motion for summary judgment, arguing in part that they were immune from liability under the MTCA’s discretionary-function exemption of Mississippi Code Annotated section 11^46-9(l)(d) (Supp.2010).[2] The trial court found that the first prong of the two-part test to determine whether governmental conduct is discretionary was satisfied: it was undisputed that the activity involved an element of choice or judgment. However, the trial court stated that no evidence had been presented, by affidavit or otherwise, regarding the second public-policy prong of the test: whether the choice or judgment exercised by the governmental entity involved social, economic, or political policy. Thus, the trial court concluded the motions were “premature” on the grounds of governmental immunity and denied them.
¶ 4. In response to this ruling, approximately seven weeks later, IHL renewed its motion for summary judgment, and co-defendant MFC joined. The motion provided the trial court with new “public policy” evidence in the form of an affidavit by Dr. Susan Holder, the State Program Leader for 4-H Youth Development through the Mississippi State University Extension Services. In November 2006, the trial court granted summary judgment to MFC and IHL, finding them immune under the MTCA’s discretionary-function exception. In January 2009, the trial court entered a final judgment of dismissal with prejudice regarding the action’s other pending claims and all other defendants. Wiltshire timely appealed, naming MFC as *566 the sole appellee.[3] She raises two issues: whether the trial court erred in considering MFC’s renewed motion for summary-judgment and in granting summary judgment to MFC because it is immune from liability under the MTCA.
DISCUSSION OF THE ISSUES
I. The Propriety of MFC’s Renewed Motion for Summary Judgment
¶ 5. Wiltshire first argues that the trial court improperly considered MFC’s renewed motion for summary judgment. She claims this issue is controlled by Mississippi Rule of Civil Procedure 59(e) and that the arguments in the renewed motion “were a mere rehash” of the original motion, with the addition of the affidavit of Dr. Holder. Wiltshire maintains that the evidence in the affidavit was available when the original motion was filed; thus, the trial court abused its discretion in considering the renewed motion.
¶ 6. Wiltshire is incorrect that Rule 59(e) controls the trial court’s consideration of MFC’s renewed motion for summary judgment. Rule 59(e) deals with motions to alter or amend a judgment, and “authorizes the trial judge to set aside a jury verdict as to any or all parts of the issues tried and to grant a new trial as justice requires.” M.R.C.P. 59 cmt. Wiltshire is correct that a motion to set aside or reconsider an order granting summary judgment will be treated as a motion under Rule 59(e). However, that is not the situation here, as there had been no judgment granted when the trial court considered the renewed motion. Here, the trial court denied the initial motion for summary judgment; the litigation continued without judgment or trial; and a renewed motion for summary judgment was filed. Wilt-shire fails to cite any law which supports her proposition that it is improper for a trial court to examine a party’s renewed motion for summary judgment prior to trial. Moreover, we know of none.
¶ 7. We also note that in denying MFC’s and IHL’s initial motion for summary judgment, the trial court found the motion “premature” on the ground of governmental immunity because the record did not contain any evidence that MFC and IHL were engaged in any policy-oriented, decision-making process concerning the alleged failures cited by Wiltshire. Accordingly, MFC renewed its motion in an attempt to cure this deficiency by submitting Dr. Holder’s affidavit procured by IHL’s counsel. We find no error in this regard.
II. The Granting of MFC’s Renewed Motion for Summary Judgment
¶ 8. Next, Wiltshire argues that even if it was not error for the trial court to consider the renewed motion for summary judgment, the trial court erred in granting summary judgment in favor of MFC based upon the discretionary-function exception of Mississippi Code Annotated section 11 — 46—9(l)(d) (Supp.2010) and that there remained a genuine issue of material fact regarding immunity for a dangerous condition on government property under Mississippi Code Annotated section ll-46-9(l)(v) (Supp.2010).
¶ 9. This Court analyzes the trial court’s grant or denial of summary judgment, as well as the application of the MTCA, de novo. Price v. Clark, 21 So.3d 509, 517 (¶ 10) (Miss.2009). Summary judgment is proper “if the pleadings, depositions, an *567 swers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The movant bears the burden of proving that no genuine issue of material fact exists and the non-movant “should be given the benefit of every reasonable doubt.” Moss v. Batesville Casket Co., 935 So.2d 393, 399 (¶ 16) (Miss.2006).
¶10. Section ll-46-9(l)(d) states that “[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused....” In order to determine whether the governmental conduct is immune under the discretionary-function exception, the two-part public-policy-function test is employed. Jones v. Miss. Dep’t of Transp., 744 So.2d 256, 260 (¶ 11) (Miss.1999) (overruled on other grounds) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). “In discerning whether a function is afforded immunity under the discretionary exception, it must first be determined whether the activity involved ‘an element of choice or judgment.’ If so, it must then be determined ‘whether the choice involved social, economic or political policy.’ ” Id. at (¶ 10). “[0]nly those functions which by nature are policy decisions, whether made at the operational or planning level, are protected. ‘[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.’ ” Id.
¶ 11. While Wiltshire concedes that the first prong of the discretionary-function test is met — that MFC’s conduct involved an element of choice or judgment — she disagrees with the trial court’s determination on the public-policy-function test’s second prong. The trial court explained that it had previously denied summary judgment because MFC and IHL had failed to bring forward any evidence that they had engaged in any policy-oriented, decision-making process regarding Wiltshire’s claims. However, since that ruling, the Defendants’ submission of the affidavit of Dr. Holder provided such evidence; thus, the second prong was satisfied as well.
¶ 12. In her affidavit, Dr. Holder, explained the history of the 4-H program, “which is the youth component of the Mississippi State University (MSU) Extension Service, with academic ties to MSU.” Additionally, she explained 4-H’s structure, programs, and “mission objectives,” which are “to assist youth in acquiring knowledge, developing life skills, and forming attitudes that will enable them to become self-directing, productive, and contributing members of society.” She stated that through the use of live animals, the junior livestock programs help youth achieve these 4-H objectives, thereby serving “to promote important social, political and economic objectives.” She concluded that 4-H and the MSU Extension Service’s participation in the Mississippi Junior RoundUp as part of the Dixie National Livestock Show at the State Fair Grounds in Jackson furthered these long-standing public policies.
¶ 13. We find no error in the trial court’s determination that the public-policy prong of the test is satisfied by Dr. Holder’s affidavit; thus, MFC is immune under the discretionary-function exception, and *568 summary judgment in favor of MFC is appropriate. We agree that MFC has offered sufficient evidence on the public-policy implications for its conduct in hosting livestock shows; the most important implication is the 4-H programs’ usefulness in developing a young person’s life skills.
¶ 14. Wiltshire counters that Dr. Holder’s affidavit does not offer any insight into how the actions by MFC of allowing dogs to run free, observers to be in proximity with livestock, cluttered and narrow barn aisles, and inexperienced participants handling dangerous animals are grounded in public policy. She claims that in allowing these actions, the organizers of the livestock show caused her injuries; moreover, the trial court did not analyze if these actions were susceptible to public-policy analysis. Wiltshire maintains these actions were mere acts of negligence by a governmental entity; thus, MFC is not immune.
¶ 15. In analyzing the public-policy prong, this Court has stated that “proof of the thought processes of pertinent deci-sionmakers” is not needed; “[rjather, the focus is on the nature of the actions taken, and whether they are susceptible to policy analysis.” Dotts v. Pat Harrison Waterway Dist., 938 So.2d 322, 328 (¶ 16) (Miss.Ct.App.2006). But the “actions taken” that Wiltshire claims are at issue are actually her own speculation as to what caused the accident, instead of MFC’s manner of hosting livestock shows at its venue. We agree with the trial court that any decisions by MFC on how it should host these events at its venue are susceptible to a public-policy analysis. As MFC itself notes, the Legislature has stated the MFC was created “[i]n order to promote agricultural and industrial development in Mississippi and to encourage the farmers to grow better livestock and agricultural products.... ” Miss.Code Ann. § 69-5-1 (1972 and Rev.2005). The MFC’s hosting of events like the livestock shows and the Mississippi Junior Round-Up facilitate these endeavors, creating “numerous economic and personal benefits” for the state and its citizens. See Miss.Code Ann. § 95-11-1 (Rev.2004).[4] Further, there are no legislative mandates as to how MFC should host the livestock shows. MFC’s hosting of the Junior Round-Up serves important social, economic and political policy; thus, the public-policy prong of the discretionary-function test is met.
¶ 16. Finally, Wiltshire argues that there is a genuine issue of fact regarding MFC’s immunity under subsection ll-46-9(l)(v). Under this statute, a governmental entity will be immune from liability for a claim:
[ajrising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care....
*569 Miss.Code Ann. § ll-46-9(l)(v) (Supp. 2010). Wiltshire claims that MFC had constructive knowledge of the dangerous conditions existing at the State Fairgrounds, and it permitted the barn aisles to be cluttered and dogs to run loose, thereby potentially exciting the livestock and creating a dangerous situation.
¶ 17. We note that the numerous provisions of the MTCA which provide immunity in subsections 11 — 46—9(l)(a) through (x) are written in the disjunctive, with (w), the next to last subsection, followed by an “or” followed by the last subsection (x). The Mississippi Supreme Court has explained that the “Applicability of any one of these sections creates immunity.” Pearl River Valley Water Supply Dist. v. Bridges, 878 So.2d 1013, 1016 (¶ 12) (Miss.Ct.App.2004) (citing State v. Hinds County Bd. of Supervisors, 635 So.2d 839, 842 (Miss.1994)). Thus, since the trial court properly found no genuine issue of material fact regarding immunity under 11 — 46—9(l)(d), a genuine issue of material fact on another subsection cannot defeat summary judgment for MFC. Therefore, this argument is without merit.
¶ 18. In conclusion, we find no error in the trial court’s grant of summary judgment in favor of MFC.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Later, Wiltshire filed a motion to amend her complaint, which was granted, to include as defendants Dingier; his mother, Charlene May; his step-father, Philip May; and the cow’s owners, Debbie Alexander (who is Charlene’s sister) and Mike Alexander.

. IHL filed a separate motion to dismiss or, in the alternative, motion for summary judgment.

. Wiltshire did not name IHL in her notice of appeal. Approximately one and one-half years later, IHL filed a motion to dismiss the appeal for lack of jurisdiction because it was never served with a notice of the appeal, and the thirty-day deadline under Mississippi Rule of Appellate Procedure 4(a) had long passed. This Court granted IHL’s motion.

. Section 95-11-1 states:
The Legislature recognizes that persons who participate in livestock shows or equine activities may incur injuries as a result of the risks involved in such activities. The Legislature also finds that the state and its citizens derive numerous economic and personal benefits from such activities. The Legislature finds, determines and declares that this chapter is necessary for the immediate preservation of the public peace, health and safety. It is, therefore, the intent of the Legislature to encourage livestock shows and equine activities by limiting the civil liability of those involved in such activities.