81 So.3d 1209 (2012)
Mindy Phillips McFARLAND and Robin Phillips, Appellants
v.
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, Appellee.
No. 2010-CA-01647-COA.
Court of Appeals of Mississippi.
March 6, 2012.
*1210 John Newton Satcher II, Gary Dale Thrash, attorneys for appellants.
Mark D. Morrison, Ridgeland, attorney for appellee.
EN BANC.
BARNES, J., for the Court:
¶ 1. Mindy Phillips McFarland was driving on State Highway 27 in Copiah County, Mississippi, when she drifted over the highway's fog line, causing the car's right wheels to drop onto the low shoulder. In her attempts to return to the roadway, she *1211 crashed the vehicle and sustained several physical injuries. McFarland and Robin Phillips, McFarland's mother and the owner of the car, filed a complaint, alleging that the Mississippi Department of Transportation (MDOT) was negligent for its failure to identify and repair the dangerous condition. The circuit court granted summary judgment in favor of the MDOT on the basis of immunity under the Mississippi Tort Claims Act (MTCA). Finding no error, we affirm the judgment.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On August 18, 2008, at approximately 5:45 p.m., McFarland was driving Phillips's Nissan Sentra on Highway 27 when she crossed over the fog line, and the car's tires dropped onto the shoulder of the highway. As the shoulder was approximately three inches or more below the elevation of the road, McFarland had difficulty re-entering the roadway. On her third attempt, she lost control of the vehicle and shot across the road and hit a tree. McFarland suffered multiple physical injuries, and the car was totally destroyed.
¶ 3. McFarland and Phillips (the Appellants) filed a complaint for negligence against MDOT for its failure to identify the deficiencies in the roadway and shoulder and its failure to repair and maintain Highway 27. MDOT filed a motion for summary judgment, contending that it is a governmental agency performing a discretionary function under the MTCA and thus, immune from liability. The circuit court granted the motion and entered a "Final Judgment of Dismissal with Prejudice" on September 13, 2010. The Appellants now appeal.

STANDARD OF REVIEW
¶ 4. A court's order granting or denying summary judgment is reviewed de novo. Pettis v. Miss. Transp. Comm'n, 44 So.3d 425, 426 (¶ 5) (Miss.Ct.App.2010) (citing Mantachie Natural Gas Dist. v. Miss. Valley Gas Co., 594 So.2d 1170, 1172 (Miss. 1992)). Under Mississippi Rule of Civil Procedure 56(c), a circuit court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Whether MDOT is entitled to immunity under Mississippi Code Annotated section 11-46-9(1)(d).
¶ 5. Section 11-46-9(1)(d) of the Mississippi Code Annotated (Rev.2002) provides that a governmental agency is immune from liability for any act "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" The intent of this exception "is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Wiltshire v. Miss. Fairgrounds Comm'n, 75 So.3d 563, 567 (¶ 10) (Miss.Ct.App.2011) (citing Jones v. Miss. Dept. of Transp., 744 So.2d 256, 260 (¶ 10) (Miss.1999) (overruled on other grounds)). Thus, to determine whether governmental conduct is discretionary, a court must address two questions: "(1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives." Knight v. Miss. Transp. Comm'n, 10 So.3d 962, 968 (¶ 19) (Miss.Ct.App.2009) (quoting Dancy v. E. Miss. State Hosp., 944 So.2d 10, 16 (¶ 18) *1212 (Miss.2006)). "Only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected." Wiltshire, 75 So.3d at 567 (¶ 10) (quoting Jones, 744 So.2d at 260 (¶ 10)).
¶ 6. The Appellants' argument concerns the second prong of the test. They contend that MDOT did not furnish proof that its failure to repair the shoulder of the highway involved a social, economic, or political policy. Specifically, the Appellants allege that the decision was not based on any economic policy since the evidence demonstrated "that MDOT had the equipment, materials and/or men on duty to repair the dangerous road condition prior to McFarland's accident." The Appellants refer to deposition testimony by Lucy Hurst, the MDOT assistant district engineer of maintenance, to support their argument.
Q. And if they were to put a box blade out there on Section 160 to do shoulder repair work, it wouldn't cost MDOT any extra moneypeople on salary. They're just charging their man-hours back and putting them in the report, correct?
A. Correct.
....
Q. [I]t didn't cost MDOT an extra penny to put somebody out on a road grader or even a box blade and just use the existing materials and level it up against the highway, correct?
A. That is correct.
. . . .
Q. Okay. Would you agree that MDOT had the equipment, either in the form of the box blade or grader, to go out there and pull the existing material back level with the road back in 2008?
A. Yes.
The Appellants also note reports by the MDOT Highway Maintenance Superintendent for that area for the months preceding and following the accident, which indicate a "shoulder drop-off" on Highway 27. Thus, they claim that MDOT was negligent in its failure to identify and repair the condition.
¶ 7. "[I]t is well settled that the maintenance of state highways is a discretionary function[.]" Lee v. Miss. Dep't. Of Transp., 37 So.3d 73, 81 (¶ 22) (Miss.Ct. App.2009). None of the statutes concerning MDOT's duty to maintain highways "impose any specific directives `as to the time, manner, and conditions for carrying out'" said duty. Id. at 77 (¶ 9) (quoting Knight, 10 So.3d at 970 (¶ 27)). "In fact, all the statutes require that MDOT use its judgment and discretion in carry out the duties prescribed therein." Id. at 77-78.
¶ 8. Furthermore, "[a]pplication of the public policy prong of the discretionary function test does not require proof of the thought processes of pertinent decisionmakers." Dotts v. Pat Harrison Waterway Dist., 933 So.2d 322, 328 (¶ 16) (Miss. Ct.App.2006) (citing Elder v. U.S., 312 F.3d 1172, 1182 (10th Cir.2002)). In Hurst's testimony, she remarked that while the county superintendent for MDOT in that area had access to the equipment and material to fix the shoulder, "he also ha[d] other jobs ... and he has to prioritize his work." She continued:
One thing I would like to mention, thoughyou see these five employees? That's all we have for the entire county of Copiah County, which has a major interstate that runs through it and several other U.S. routes plus secondary routes. So we have several routes that these five men maintain day in and day out.
*1213 As this Court observed in Lee, "MDOT must use its discretion and judgment when determining the order in which roads will be resurfaced or repaired." Lee, 37 So.3d at 78 (¶ 9). While MDOT may have had the resources available to repair the shoulder, scheduling of the repair and using its five workers in Copiah County, was a judgment involving social and economic policy. It was MDOT's policy decision how to utilize its resources most effectively.
¶ 9. Accordingly, we agree with MDOT that the mere fact it possessed sufficient resources to repair the alleged defects on the highway is "irrelevant." The maintenance of highways remains a discretionary function; MDOT's decision how to prioritize and employ its resources involves social and economic policy. Therefore, we find that MDOT was immune from liability under section 11-46-9(1)(d). Finding no error, we affirm the circuit court's granting of summary judgment.
¶ 10. THE JUDGMENT OF THE COPIAH COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. ROBERTS, J., DISSENTS JOINED BY LEE, C.J., AND RUSSELL, J.
ROBERTS, J., dissenting:
¶ 11. With utmost respect for the majority, I dissent. The majority's resolution of this appeal turns on the "discretionary function" immunity provision of the Mississippi Tort Claims Act. Mississippi Code Annotated section 11-46-9(1)(d) (Rev.2002) states:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
To determine whether an act or a failure to act is a discretionary function, we use the following two-part test: "(1) whether the activity involved an element of choice or judgment, and if so; (2) whether the choice or judgement [sic] in supervision involves social, economic or political policy alternatives." Barr v. Hancock County, 950 So.2d 254, 257 (¶ 10) (Miss.Ct.App. 2007). "Conversely, conduct will be considered ministerial, and, therefore, immunity will not apply, if the obligation is imposed by law leaving no room for judgment." Id.
¶ 12. The majority cites Lee v. Mississippi Department of Transportation, 37 So.3d 73, 81 (¶ 22) (Miss.Ct.App.2009) for the principle that "maintenance of state highways is a discretionary function." The majority accurately quotes a portion of the conclusion of this Court's opinion in Lee. However, Lee pertained to maintenance of state highways in the form of resurfacing the actual surface of the highway. That is, in Lee it was "undisputed that the area of highway on which the accident occurred had areas of indentation, or was `rutted out,'" which contributed to "water pooling on the highway." Id. at 77 (¶ 8). In that case, Richard Lee, the District Engineer for [the Mississippi Department of Transportation (MDOT)], stated in a sworn affidavit that "the District is allotted a finite amount of funds annually for road maintenance. At the discretion of the Agency, those finite available funds are used where the Agency believes they are needed most, particularly on the roads of the State in the most need of repair." Id. at 78 (¶ 9). This case does not involve the maintenance of a highway in the form of a major resurfacing *1214 project. Mindy Phillips McFarland's claim is related to MDOT's alleged failure to perform routine maintenance by simply "grading" the shoulder of Highway 27 in Copiah County. The majority accurately relates the facts that led to McFarland's injuries and her claim. According to McFarland, the drop-off from the surface of Highway 27 to the shoulder was so significant it prevented her from safely re-entering the right-of-way.
¶ 13. The parties took numerous pre-trial depositions. Those depositions were exhibits were introduced as exhibits during the summary judgment proceedings. Lucy Hurst, MDOT's assistant district engineer of maintenance for District 3, testified by deposition. According to Hurst, MDOT had made a policy decision to upgrade the shoulders of Mississippi highways. Specifically, Hurst explained:
What has happened over the State of Mississippi, since about 2000, we have noticed that if we have room out there to add two more feet of extra pavement and this was a decision made out of the Jackson tenth floorthat we it would be prudent for us to put out two more feet of paved shoulder in order to keep drop-offs from happening, if you have to room to start with. So at that time, once any job c[a]me up for an overlay, if it had the required with, we were allowed to put two extra feet out there for a shoulder.
When asked why MDOT made that decision, Hurst responded, "[b]ecause of us always having to repair shoulders and spending lots and lots of money on grading the shoulders. It was noted that we could save a lot of money to go ahead and pave them if we had room." Hurst went on to testify that the funds for the upgrade of Highway 27 were to be paid for by the American Assistance and Recovery Act.
¶ 14. However, Hurst also testified that a shoulder drop-off of greater than three inches should be repaired within a month of recognition of the problem. Hurst went on to testify, "[i]f the shoulder drop-off is bad enough ... [the maintenance crew] will then go out immediately and take mixture and put [it] out there." According to Hurst, the maintenance crew has "to blade the shoulders once a year every year. It's mandatory." According to Hurst, standard operating procedures dictate what equipment and materials are necessary to repair shoulder drop-offs. McFarland's expert, George M. Hammitt, PhD, PE, opined that the shoulder where McFarland was unable to re-enter the roadway dropped off three inches or more for approximately four hundred feet. Robert Broadwater, the "Highway Maintenance Superintendent 2" for Copiah County, among others, testified that he personally inspects Highway 27 once each month. The record contains Broadwater's monthly maintenance inspection reports. Broadwater's maintenance inspection report from February 2008 notes that there was a shoulder drop-off of unspecified depth that needed to be rectified as one travels south on Highway 27 approximately 3.1 miles from the Copiah county line. The record does not contain Broadwater's March 2008 maintenance inspection report, but for the next four months, Broadwater reported unsatisfactory shoulder drop-offs at the same exact location on Highway 27. Broadwater's August 2008 report did not indicate that there was a shoulder drop-off at the same location. Coincidentally, that was the same month as McFarland's crash. However, Broadwater's September, October, and November 2008 reports note that shoulder drop-offs required remedying approximately two-tenths of a mile from the earlier 2008 shoulder drop-off on Highway 27. In the context of a motion for summary judgment, we are required to view *1215 the evidence in the light most favorable to the non-moving party. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997). Accordingly, I find we should conclude that MDOT was not rectifying shoulder drop-offs within the prioritized one-month time frame expressed by Hurst.
¶ 15. The record also contains a summary compilation of MDOT's Copiah County maintenance crew's activity log for August 21, 2007, through June 9, 2008a period of almost one year before McFarland's accident. Despite Broadwater's repeated monthly notations of the need for repair of shoulder drop-offs at the same reference point of Highway 27, the activity log indicates that the MDOT county maintenance crew spent one day in April 2008 conducting "Other Shoulder & Approach Maintenance" on Highway 27. Hurst explained that "Other Shoulder & Approach Maintenance" was in reference to "[m]iscellaneous activities pertaining to the shoulder and approach maintenance not identified as a specific function. This includes crack repair and concrete surface replacement." Hurst further explained that "Other Shoulder and Approach Maintenance" did not include what she described as "mandatory" annual grading of the shoulders to eliminate unsafe drop-offs. Thirteen days after the maintenance crew performed "Other Shoulder & Approach Maintenance," Broadwater still noted that shoulder drop-off maintenance was necessary beginning at the same exact location. It is undisputed that the MDOT maintenance crew for Copiah County had the materials, equipment, and manpower to have timely repaired the drop-off prior to McFarland's accident. In the context of the review we must conduct, I find that it is necessary to conclude that the maintenance crew was not remedying the shoulder drop-offs that Broadwater consistently noted. Other than that single entry, the maintenance crew's activity log makes no mention of repairing any substandard or dangerous shoulder drop-offs. Instead, the maintenance log indicates that the maintenance crew repaired one or more signs, mowed the grass, and sprayed weeds along Highway 27.
¶ 16. While it is true that MDOT has limited funds and limited manpower, all governmental agencies face the same limitations. Even so, the Mississippi Legislature did not give MDOT unqualified blanket immunity when it comes to all aspects of maintenance of state highways. The circuit court granted summary judgment exclusively on the discretionary function immunity exemption to the waiver of sovereign immunity found in section 11-46-9(1)(d). Discretionary immunity does not allow discretion without reason. Given the precise circumstances of this case, reviewed within the bounds of the appropriate standard of review, I detect no economic policy behind the decision to neglect Hurst's stated standard of repairing significant shoulder-drop offs within one month. I interpret the majority opinion as conveying the discretion for MDOT to do what it wants when it wants without requiring any explanation beyond claiming limited resources in the form of manpower and time.
¶ 17. It is very well possible that, if this matter were remanded for a bench trial on the merits, the circuit court would consider the exact same conflicting evidence and conclude that the weight of the evidence falls in MDOT's favor. Even so, we must consider a motion for summary judgment with a skeptical eye. Ratliff v. Ratliff, 500 So.2d 981, 981 (Miss.1986). It is better to err on the side of denying the motion. Id. Given the fact that the manpower, equipment, and materials were available to the maintenance crew at all timescombined with Hurst's testimony that, once discovered, a drop-off of three inches or more should be repaired within a month; Broadwater's *1216 near constant monthly notations regarding drop-offs in the same locations; and the maintenance crew's activity log showing only one instance of remedying such drop-offs, I do not find that the circumstances of this case demonstrate that the choice or judgment in supervision involved any social, economic, or political policy alternative. The MTCA does not provide unqualified and absolute immunity in this particular case. I would reverse the judgment of the circuit court and remand this matter for a trial before the circuit court, sitting without a jury. Accordingly, I respectfully dissent.
LEE, C.J., AND RUSSELL, J., JOIN THIS OPINION.